**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John A. LATTAUZIO, Janet M. Lattauzio,
Theodore M. Bennett and Carol Ann
Bennett, Defendants-Appellants.**

No. 82–2335.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1984.

al of El Paso, Texas, the sum of $375,000, with interest, payment to be made in certain described installments. The promissory note evidencing such indebtedness was signed on behalf of Rancho Shur-Sav, Inc., by Theodore Bennett, as its president, and John Lattauzio, as its secretary. As a part of this transaction, Theodore and Carol Bennett and John and Janet Lattauzio signed a Small Business Administration Guaranty Agreement whereby they promised, *inter alia,* to unconditionally guarantee payment of the promissory note signed by Rancho Shur-Sav. Ninety percent of Rancho Shur-Sav's indebtedness to the bank was guaranteed by the Small Business Administration (SBA). The promissory note was later assigned by the bank to the SBA.

The SBA brought the present suit against the four guarantors, alleging that the principal obligor, and its successor, had defaulted on payments, and that the guarantors, under the continuing guaranty agreement, were obligated to pay a deficiency judgment. By answers, the defendants denied there was a default on any monies due and owing from them, and alleged certain affirmative defenses. One such affirmative defense was that the SBA had not sold the collateral, *i.e.,* inventory, equipment, goodwill, and the trade name of Rancho Shur-Sav in a "commercially reasonable manner" as required by N.M.Stat. Ann. § 55–9–504 (1978), and that, accordingly, they were entitled to a credit on the amount claimed by SBA to be due and owing.

Later, SBA filed a motion for summary judgment, supported by a memorandum brief with certain exhibits attached thereto. It was SBA's basic position that the principal obligator was in default; that the obligation of the four guarantors was absolute and unconditional; and that, accordingly, the guarantors could not successfully raise the defense that the sale of the collateral securing the principal indebtedness was not

Wayne A. Jordon of Durrett, Jordon & Grisham, P.C., Alamogordo, N.M., for defendants-appellants.

Eric S. Benderson, Small Business Administration, Washington, D.C. (William L. Lutz, U.S. Atty., and Sandra M. Kemrer, Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before SETH and McWILLIAMS, Circuit Judges, and CAMPOS,* District Judge.

McWILLIAMS, Circuit Judge.

For value received, Rancho Shur-Sav, Inc., a New Mexico corporation, promised to pay to the order of the First City Nation-

---

* Honorable Santiago E. Campos of the United States District Court for the District of New Mexico, sitting by designation.

made in a "commercially reasonable manner."

The four guarantors responded to the SBA's motion for summary judgment with a memorandum of their own. The guarantors' position is that they can raise the defense that the sale of the collateral was not conducted in a commercially reasonable manner, *i.e.*, that the sale was not adequately advertised, that there was inadequate electricity at the sale site, and that certain of the collateral could only be seen by aid of a flashlight; also that they failed to use a professional auctioneer, and the like, and that they were therefore entitled to a credit. By reply memorandum, the SBA asserted that the sale of the security was made in a commercially reasonable manner and that in fact the sale realized the sum of $156,000, but that such was irrelevant under the terms of the guaranty agreement.

As stated, by their answers to the SBA's complaint, the four defendants denied that the principal debtor, Rancho Shur-Sav, was in default and further denied that they, the four defendants, owed SBA anything. On appeal, the four defendants-appellants argue that because they, in their answers, denied default and denied owing SBA any monies, such denials posed genuine issues of material facts which precluded the entry of summary judgment. Such is not our view.

█ SBA's motion for summary judgment, together with the supporting memorandum and the exhibits attached thereto, was clearly based on the premise that the debtor was in default and that the defendants were liable under their guaranty agreement. The issue raised by the SBA's motion for summary judgment was whether the defense that the collateral was not sold in a "commercially reasonable manner" was available to guarantors, such as these defendants. By their response to the SBA's motion for summary judgment, the four defendants joined the issue thus raised, and took the position that such defense was available to them. The defendants in their opposition to the motion for summary judgment did *not* assert that the debtor was not itself in default, and that accordingly, they were not liable under their guaranty. Such being the posture of the matter, the defendants cannot now raise in this Court an issue which they did not raise in the trial court. A party generally cannot lose in a trial court on one theory and thereafter prevail on appeal on a different theory. *See United States Steel v. Warner*, 378 F.2d 995, 999 (10th Cir.1967). Moreover, the trial court's grant of summary judgment was clearly correct under Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment may not rest on the mere allegations or denials of his pleadings. C. Wright, Federal Courts § 99, at 667 (1983). Further, from the record before us, there is little doubt but that the debtor, Rancho Shur-Sav, defaulted.

█ There is a contrariety of authority bearing on the question of whether a person, situated as these four defendants, can avail himself of the defense that the security holder failed to dispose of the security in a commercially reasonable manner. *See, for example, United States v. Bertie*, 529 F.2d 506 (9th Cir.1976) *vis-a-vis United States v. Willis*, 593 F.2d 247 (6th Cir. 1979). In *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the court reaffirmed that "federal law governs questions involving the rights of the United States arising under nationwide federal programs." *Id.* at 726. In addition, pertinent regulations prescribe that federal law governs in the instant case. 13 C.F.R. § 101.1(d)(2) & (4) (1984). For general background, see *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966) and *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). The task, then, is to determine the substantive federal rule. As was said in *Clearfield Trust*, "In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards," and further that "[i]n our choice of the applicable federal rule we

have occasionally selected state law." *Id.* 318 U.S. at 367, 63 S.Ct. at 575. Appellants argue that this Court should employ state law in crafting the federal rule and that, under state law, guarantors are entitled to the defense of commercial reasonableness available to debtors. Since there is no Act of Congress to the contrary, we shall assume, in our disposition of the present case, that in fashioning the governing rule the Uniform Commercial Code of the State of New Mexico is incorporated therein. We shall further assume that N.M.Stat. Ann. § 55–9–504 (1978) concerning the sale of collateral in a commercially reasonable manner inures to the benefit of a guarantor. Assuming all this, there remains the question of whether the four defendants in this case, by signing the guaranty agreement, waived by contract the protections arguably afforded by the statute. We conclude that they have, and that accordingly, the defense which they rely on is not available.

We reject the initial suggestion that guarantors, such as these defendants, cannot, as a matter of law, waive the protections contained in N.M.Stat.Ann. § 55–9–504 (1978). The guaranty agreement in the instant case provides that the four defendants "unconditionally guarantee[ ] to the lender ... the due and punctual payment when due ... of the principal of and interest on ... with respect to the note of the debtor ...." The defendants waived notice concerning a variety of matters, including "demand, advertisement or notice of the time or place" of the sale of the collateral, and, *inter alia,* granted the lender full power, in its uncontrolled discretion and without notice, to consent to the substitution, exchange or release of all or any part of the collateral, regardless of whether the value of the collateral, if any, received by the SBA is equal to the value of the collateral surrendered. Finally, in an obvious attempt to reinforce these explicit waiver provisions, the guaranty agreement further provides that "[t]he obligations of the [defendants] shall not be released, discharged or in any way affected ... by reason of any action lender may take or

omit to take under the foregoing powers." There is no suggestion in the instant case of willful misconduct on the part of either the lender or the SBA, only the claim that the SBA in selling the collateral failed to act in a commercially reasonable manner. That defense is not available to these defendants because by signing the guaranty agreement they waived such defense.

We believe our resolution of the present case is in accord with the rationale of *United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d 673 (10th Cir.1964), where we said:

> On the theory of increased risk the guarantors contend that they were released, either fully or to the extent of the storm damage, by the action of the United States in permitting the insurance to lapse. Their reliance on "equities" and general principles of law are unpersuasive because their rights and liabilities are fixed by the contracts of guaranty. The risk of the guarantors was not increased because their obligations were absolute and unconditional. By the terms of the guaranty contracts SBA could have made an entire release of the security for the loan and still have recovered from the guarantors. Lack of notice of mortgagor's default in its obligation to insure is unimportant because the guarantors expressly waived notice of any default by the mortgagor. The guarantors have failed to show the breach of any duty owed to them. They have no right to a credit because of the storm damage.

*Id.* at 677.

*Barbour v. United States,* 562 F.2d 19 (10th Cir.1977) is, in our view, inapposite, since that case involved a suit by the SBA on a promissory note, as opposed to the present suit which is based on a guaranty agreement. The approach which we take in the instant case is similar to the approach taken in *United States v. Kurtz,* 525 F.Supp. 734 (E.D.Pa.1981), *stay denied,* 528 F.Supp. 1113 (E.D.Pa.1981), *aff'd without opinion,* 688 F.2d 827 (3d Cir.1982),

*cert. denied,* 459 U.S. 991, 103 S.Ct. 347 (1982). There, the United States brought an action, on behalf of the SBA, to enforce a guaranty on a defaulted loan made under the SBA loan program. The trial court granted the summary judgment motion of the United States on the ground that even if the state U.C.C. were followed, and even if the guarantor enjoyed the protection of the commercially reasonable defense, the guarantor had waived the defense by the terms of the unconditional guaranty. We find *Kurtz* persuasive.

Judgment affirmed.