785 F.2d 843
 42 UCC Rep.Serv. 1867
 UNITED STATES of America, Plaintiff-Appellee,
v.
NEW MEXICO LANDSCAPING, INC., Employment Security
Commission, Jemez Development, Inc., City of
Albuquerque, New Mexico,
Defendants-Cross Defendants-Appellees,
LaMonte J. Urban, Ella Mae Urban, Defendants-Cross
Defendants-Appellants,
Bureau of Revenue, State of New Mexico, Defendant-Cross
Claimant-Appellee,
Patricia A. Buchanan, Springer Building Materials
Corporation, Defendants.
 No. 83-2329.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 28, 1986.
 
 S. Ricardo Narvaiz (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on brief), Small Business Admin., Washington, D.C., for plaintiff-appellee.
 James T. Roach, Albuquerque, N.M., for defendants-appellants.
 Before BARRETT and McKAY, Circuit Judges, and THEIS,* District Judge.
 BARRETT, Circuit Judge.
 
 
 1
 This appeal is taken by defendants-appellants, Lamonte J. Urban and Ella Mae Urban (Urbans), guarantors of a Small Business Administration (SBA) loan, from the district court's grant of a Motion for Summary Judgment and entry of a Stipulated Judgment, Decree of Foreclosure, Order of Sale (Stipulated Judgment), Deficiency Judgment and Order denying Urban's Motion to Set Aside the Stipulated Judgment all in favor of plaintiff-appellee, SBA. The district court granted SBA's Motion for Summary Judgment finding that the Urbans had waived their defenses as guarantors under the SBA guaranty agreement.
 
 I.
 Facts
 
 2
 On June 30, 1978, New Mexico Landscaping, Inc. (debtor) executed and delivered a promissory note evidencing a loan to it of $145,000 by the SBA. The note was for a term of ten years at an interest rate of 3% per annum. To secure payment of the note, the Urbans executed a guaranty agreement which was also executed and delivered to the SBA on June 30, 1978.
 
 
 3
 Debtor defaulted on payments to the SBA and by letter dated June 23, 1980, the SBA accelerated the indebtedness under the terms of the promissory note. In the same letter, the SBA requested payment from the Urbans of the unpaid principal and interest pursuant to the guaranty agreement.
 
 
 4
 On March 4, 1982, the SBA filed the instant suit against the Urbans in the district court for the District of New Mexico to collect the principal and interest owing as specified in the guaranty agreement. On November 16, 1982, the SBA moved for summary judgment on the basis that the Urbans "executed an unconditional and absolute guarantee for a government loan" and the Urbans' defenses were insufficient as a matter of law. (R., pp. 19, 20, 20-32).
 
 
 5
 The Urbans opposed the motion for summary judgment on several grounds, including allegations that the SBA failed to handle or dispose of the collateral for the loan in a commercially reasonable manner. They also alleged that the SBA allowed the deterioration and loss of the collateral by the SBA's willful acts or willful failure to act. In support of their position, Mr. Urban stated in an affidavit that while the SBA had possession or control alone or in connection with the trustee in bankruptcy since August, 1980, the SBA did not sell the collateral until June 9, 1981. Mr. Urban also stated that on several occasions he informed SBA officials of the alleged deterioration, depreciation, and waste of the collateral, but the SBA failed to act to prevent the loss. (R., pp. 34-44).
 
 
 6
 On December 27, 1982, the district court granted the SBA's motion for summary judgment and on March 4, 1983, entered the Stipulated Judgment. While the Stipulated Judgment indicates that the Urbans' attorney appeared, the SBA admitted that it was not sent to Urbans' attorney. (R., p. 105.) In addition, the real property securing the loan was sold on May 4, 1983, without formal notice to the Urbans.
 
 
 7
 On August 18, 1983, a deficiency judgment for $64,620.45 was entered against the Urbans and on August 26, 1983, they moved to set aside the Stipulated Judgment. That motion was denied on September 16, 1983.
 
 
 8
 The parties raise several issues for our consideration. We believe the dispositive issues can be stated as follows: (1) whether state or federal law applies in this case; (2) whether the "defense" of commercial unreasonableness was available to the Urbans; (3) whether the district court erred in granting summary judgment; and (4) whether the Urbans' due process rights were violated because they were not notified of the entry of the Stipulated Judgment or the foreclosure sale.
 
 II.
 Governing Law
 
 9
 The parties agree that under Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) federal law governs questions arising under the SBA, a nationwide federal program. What the parties dispute, however, is the substantive federal rule of law to be applied in this case.
 
 
 10
 We begin by noting that in Clearfield Trust the Supreme Court stated: "In the absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.... In our choice of the applicable federal rule we have occasionally selected state law." 318 U.S. at 367, 63 S.Ct. at 575. We followed the Clearfield Trust approach in United States v. Lattauzio, 748 F.2d 559 (10th Cir.1984), a case similar to the case at bar in which defendant guarantors of an SBA loan sought to raise the "defense" of commercial unreasonableness. In Lattauzio we held as follows:
 
 
 11
 Since there is no Act of Congress to the contrary, we shall assume, in our disposition of the present case, that in fashioning the governing rule the Uniform Commercial Code of the State of New Mexico is incorporated therein. We shall further assume that N.M.Stat.Ann. Sec. 55-9-504 (1978) concerning the sale of collateral in a commercially reasonable manner inures to the benefit of a guarantor.
 
 
 12
 748 F.2d at 562. See also, United States v. Meadors, 753 F.2d 590 (7th Cir.1985).
 
 
 13
 We assume now, as we did in Lattauzio, that the New Mexico Uniform Commercial Code (UCC) is to be incorporated herein as the substantive federal law to be applied. While section 55-9-504 "inures to the benefit of a guarantor," we look to the common law of New Mexico with respect to whether the "defense" of commercial unreasonableness under section 55-9-504 can be waived by agreement of the parties.
 
 
 14
 Our research reveals that the New Mexico Supreme Court addressed this very issue in American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975). There the court considered the contention of the guarantors that the lender had acted in a commercially unreasonable manner by negligently failing to perfect a security interest in the collateral. The supreme court reviewed applicable provisions of the UCC as enacted by the New Mexico Legislature. The court then held that the UCC "allows the parties [to a guaranty agreement] to determine the standards by which the performance of their good faith obligations are to be measured...." 540 P.2d at 1298.
 
 
 15
 The New Mexico Supreme Court concluded that the standard of care regarding the collateral which the lender owed the guarantors could simply be determined by "reading and interpreting the provisions of the guaranty agreement...." Id. After reviewing the terms of the guaranty agreement, the court held: "Where a guarantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain...." Id. at 1299. Thus, we hold that under New Mexico law the "defense" of commercial unreasonableness available under section 55-9-504 of the New Mexico UCC can be waived by agreement of the parties.
 
 III.
 Defense of Commercial Unreasonableness
 
 16
 Assuming, as we do, that the above sets forth the substantive law to be applied in this case, we consider whether the Urbans waived protections afforded under the New Mexico UCC by executing the SBA guaranty agreement. We believe a review of the provisions of the SBA guaranty agreement will reveal that the Urbans waived the SBA's duties regarding the collateral.
 
 
 17
 First, we note that the Urbans "unconditionally" guaranteed payment of the note entered into between the SBA and the debtor: "In order to induce Small Business Administration (hereinafter called "Lender") to make a loan or loans, or renewal or extension thereof, to New Mexico Landscaping, Inc. (hereinafter called the "Debtor"), the Undersigned hereby unconditionally guarantees to lender ... the due and punctual payment when due ... of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor...." (R., p. 72.)
 
 
 18
 Second, under the agreement, the Urbans waived several substantive rights as guarantors.
 
 
 19
 The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the Undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by lender upon such substitution, exchange, or release shall be of the same or different character or value than the collateral surrendered by lender;
 
 
 23
 (e) In the event of the nonpayment when due ... to realize on the collateral ... at any public or private sales ... without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise ... all as Lender in its uncontrolled discretion may deem proper....
 
 
 24
 The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 The obligations of the Undersigned hereunder, and the rights of Lender in the collateral, shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender: ... by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way ... nor by reason of the fact that the value of any of the collateral ... may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste or loss by fire, theft, or otherwise of any of the collateral, unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Lender.
 
 Id. (emphasis added.)
 
 28
 It appears from the plain meaning of the guaranty agreement that the Urbans waived substantial rights otherwise available under the UCC. For instance, the Urbans waived their right to contest the value of the collateral which "may not have been correctly estimated or may have changed or may hereafter change." Id. In addition, the Urbans waived their "rights against Lender ... [for] any deterioration, waste or loss by fire, theft or otherwise of any of the collateral, unless ... caused by the willful act or willful failure to act of Lender." Id. In light of these provisions, we hold that under the guaranty agreement, the Urbans waived the "defense" of commercial unreasonableness with respect to the SBA's disposition of the collateral securing the loan agreement between SBA and New Mexico Landscaping, Inc. The approach we follow here is consistent with United States v. Lattauzio, 748 F.2d 559 (10th Cir.1984) and United States v. Kurtz, 525 F.Supp. 734 (E.D.Pa.1981), stay denied, 528 F.Supp. 1113 (E.D.Pa.1981), aff'd without opinion, 688 F.2d 827 (3rd Cir.1982), cert. denied, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982), which we followed in Lattauzio. 748 F.2d at 562.
 
 IV.
 Issues Of Material Fact
 
 29
 The Urbans contend that even if they are barred from raising the "defense" of commercial unreasonableness, the district court erred in granting summary judgment in favor of the SBA because there were genuine issues of material fact; namely, whether the SBA acted in good faith and, in the alternative, whether the depreciation of the collateral was caused by the SBA's "willful act or willful failure to act."
 
 
 30
 As quoted above, the SBA guaranty agreement provides that the rights of the SBA shall not be affected by various events including deterioration, waste or loss by fire and theft "unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of lender." (R. p. 72.) The Urbans argue that a fact issue exists as to the SBA's willful act or willful failure to act with respect to the collateral. This issue was raised in the Memorandum in Opposition to Motion for Summary Judgment and in an affidavit filed by Mr. Urban. (R. p. 45-48.) The affidavit states that there was dissipation of assets over the approximate ten month period when the collateral was in the possession or control of the SBA, that Mr. Urban contacted an official of the SBA on several occasions advising him of this fact, and the SBA failed to take adequate action to prevent the loss. Because of this and other facts raised in the affidavit, the Urbans argue that summary judgment should not have been granted.
 
 
 31
 This court has defined "willful" in a civil context as "an intentional misdeed or such gross neglect of a known duty as to be the equivalent thereof." Diamond Ring Ranch, Inc. v. Morton, 531 F.2d 1397, 1405 (10th Cir.1976) (emphasis added), quoting Capitol Packing Co. v. United States, 350 F.2d 67, 78-79 (10th Cir.1965). Any legal duty on the part of the SBA to protect the collateral from "deterioration, waste, loss by fire, theft or otherwise," however, was expressly waived in the guaranty agreement. Therefore, in order to establish a "willful act or willful failure to act," by the SBA under the guaranty agreement, a guarantor must allege more than "gross neglect of a known duty." A guarantor seeking to establish "willfulness" under this guaranty agreement must allege "a purpose by the SBA to diminish the value of the security in order to intentionally injure the defendants." Austad v. United States, 386 F.2d 147, 151 (9th Cir.1967) (guarantors waived rights under an SBA guaranty agreement).
 
 
 32
 The Urbans did not allege such a purpose by the SBA in their answer or in the Memorandum in Opposition to Motion for Summary Judgment and the accompanying affidavit. Therefore, the issue was not properly raised before the district court. Thus, we cannot hold that the district court erred in granting SBA's motion for summary judgment as a matter of law. Likewise we find no error in the district court's grant of summary judgment on the Urbans' good faith claim.
 
 V.
 Notice
 
 33
 The Urbans' attorney filed an affidavit stating that he did not appear before the court regarding the Stipulated Judgment, did not stipulate to the Stipulated Judgment, did not receive a copy of the entered judgment, and knew nothing about it until after it was entered and the property had been sold at a foreclosure sale. (R., pp. 94-96.) Because of these omissions, the Urbans moved to set aside the Stipulated Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure. The district court denied the motion. (R., p. 123.) The Urbans contend that the trial court erred in refusing to rescind the Stipulated Judgment and consequently the deficiency judgment because they were not notified of the entry of the Stipulated Judgment and were therefore denied due process.
 
 
 34
 The SBA responds by noting that the Urbans filed an answer both to its complaint and amended complaint. The Urbans also responded to the SBA's Motion for Summary Judgment and filed an accompanying affidavit. In addition, only after considering the arguments and the documents submitted by both parties, did the court grant SBA's Motion for Summary Judgment. Under these circumstances, SBA argues that the Urbans were accorded due process.
 
 
 35
 We hold that the district court was correct in refusing to grant the Urbans' motion to set aside the Stipulated Judgment or the deficiency judgment. We adopt the court's analysis as follows:
 
 
 36
 The Urbans now seek relief under Rule 60(b) from the Judgment, Sale and deficiency judgment. They maintain that they are entitled to relief because the court was obviously under the mistaken belief that the Urbans stipulated to the Judgment and Order. The Urbans, however, have not been prejudiced by the fact that they did not stipulate to the Judgment and Order. The court had already granted the United States' motion for summary judgment and the circulation of the Judgment and Order for concurrence as to form of all counsel was merely formality. The Urbans do not object to any particular provision of the Judgment and Order, just to the fact that they did not stipulate to it. The Judgment and Order could have been entered without the stipulation of any party.
 
 
 37
 Defendants are not entitled to relief because they never received a copy of the Judgment and Order. Federal Rules of Civil Procedure 77(d) was revised in 1946 to prevent courts from vacating and re-entering judgments merely because the court clerk failed to give notice of the entry of judgment. Although special circumstances may entitle the party to such relief when he has not received notice of an adverse judgment, this case does not present such circumstances. [Citations omitted.] The Urbans were aware since December 28, 1982, that Judgment would be entered against them.
 
 
 38
 (R., pp. 124-25.)
 
 
 39
 The Urbans also urge us to set aside the Foreclosure Decree and Order of Sale for the alleged due process violations set forth above. Specifically, the Urbans contend that the failure of the SBA or anyone else to notify them directly of the sale was in violation of Rule 5(b) of the Federal Rules of Civil Procedure. They argue that constructive notice by publication, employed by the SBA and required under section 39-5-1 of the New Mexico Statutes, does not satisfy the direct notice requirement of Rule 5. The Urbans maintain that they were prejudiced by the SBA's actions because "Mr. Urban intended to find purchasers or investors to purchase the property at a fair and adequate price." Appellants' Brief-In-Chief, p. 30.
 
 
 40
 Section 39-5-1 of the New Mexico Statutes provides as follows:
 
 
 41
 [Time and notice of judicial sales.]
 
 
 42
 That no Lands, Tenements, goods or chattels shall be sold by virtue of any execution or other process ... unless the time and place of holding such sale and full description of property to be sold shall have previously been published for four weeks preceding said sale in English or Spanish ... in the county in which said property situate....
 
 
 43
 There appear to be no other formal legal requirements under New Mexico law to satisfy the notice requirements for a judicial sale of property. We observe that under the guaranty agreement, the guarantor waives any notice with respect to the disposition of collateral by the SBA to the extent provided by law.
 
 
 44
 The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the Undersigned ... to deal in any manner with the liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
 
 
 45
 * * *
 
 
 46
 * * *
 
 
 47
 (e) ... to realize on the collateral or any part thereof ... at any public or private sale ... without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise ... such powers to be exercised only to the extent permitted by law.
 
 
 48
 (R., p. 72.) There is also evidence in the Record that the Urbans had actual notice some two weeks prior to the impending sale. (R., p. 101.)
 
 
 49
 The SBA complied with the provisions of New Mexico law with respect to the foreclosure sales. Furthermore, the Urbans waived any "residual" rights to be notified of the sale under the guaranty agreement. While it is desirable that actual notice be afforded interested and affected parties in foreclosure sales, under these circumstances we hold that the district court did not err in refusing to set aside the Foreclosure Decree and Order of Sale.
 
 
 50
 AFFIRMED.
 
 
 
 *
 The Honorable Frank G. Theis, United States District Judge for the District of Kansas, sitting by designation