**UNITED STATES of America, on Behalf of its Agency, the SMALL BUSINESS ADMINISTRATION, Plaintiff,**

v.

**Delores EDWARDS, et al., Defendants, Counterclaim Plaintiffs and Third Party Plaintiffs,**

v.

**UNITED STATES of America, Counterclaim Defendant.**

**PIONEER NATIONAL BANK f/n/a/ First National Bank of Carbondale, Third Party Defendant and Counterclaim Plaintiff,**

v.

**Delores EDWARDS, et al., Counterclaim Defendants.**

**No. 1:CV–90–0383.**

United States District Court, M.D. Pennsylvania.

May 21, 1991.

---

Joseph J. Terz, Asst. U.S. Atty., Harrisburg, Pa., for plaintiff and counterclaim defendant.

Gregory J. Pascale, Needle & Goldenziel, Scranton, Pa., for third party defendant and counterclaim plaintiff.

Irwin Schneider, O'Malley, Harris & Schneider, P.C., Scranton, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

This action arises out of a Note, mortgage and personal guaranties related to a loan made in February 1973 by the Small Business Administration ("SBA") and the First National Bank of Carbondale to R & D Investments Inc. d/b/a Edwards Brothers Packing Co. ("Edwards Brothers") in the amount of six hundred and fifty thousand dollars. On February 23, 1990 the United States initiated an action on behalf of the SBA for mortgage foreclosures and money judgment against defendant guarantors of the loan [1]. Defendants Delores and John Edwards filed, on March 26, 1990, an answer asserting a counterclaim against the SBA alleging, inter alia, that the SBA violated its fiduciary duty and its duty of good faith owed to the defendants by failing to: 1) properly maintain and attempt to sell mortgaged real estate which Edwards Brothers advanced as security for the note and 2) apply the proceeds of the life insurance policy of Richard M. Edwards, Jr. to the amount owing on the note.[2] On April 4, 1990, Delores and John Edwards filed a third party complaint against the Pioneer American Bank, f/k/a First National Bank of Carbondale, ("Pioneer Bank") advancing the same claims as those asserted against the SBA. On May 15, 1990, Pioneer Bank filed an answer to the third party complaint asserting a counterclaim against Delores and John Edwards for losses caused by their default on the loan central to the instant action and for default on additional loans made by Pioneer Bank to Edwards Brothers and John Edwards.[3] On December 20, 1990, both the SBA and Pioneer Bank filed motions for summary judgment, with exhibits attached, against Delores and John Edwards.[4] Significantly, neither Pioneer Bank nor the defendants address Pioneer Bank's claims concerning the additional loans. Therefore, the issue of the additional loans made by Pioneer Bank to Edwards Brothers and John Edwards will not be addressed in this memorandum.

## II. RELEVANT FACTS

In February of 1973 a direct participation loan was made by the SBA and Pioneer

---

1. The named defendants in this case are: Delores Edwards a/k/a Dolores Edwards, Delores Edwards as executor of the estate of Richard M. Edwards, Sr., Jerilynn Edwards Johnson f/k/a Jerilynn S. Edwards and John W. Edwards as executor of the estate of Richard M. Edwards, Jr.

2. Defendant Jerilynn Edwards Johnson is not represented in the instant action and has not filed an answer to the complaint. While the United States Marshal has filed a proof of service by certified mail with the Court, it appears that the summons and complaint were received by one Leslie Johnson, not the defendant Jerilynn Edwards Johnson. At this time, it is not known whether Leslie Johnson is a person authorized to receive service on behalf of this defendant. See Fed.R.Civ.P. 4; Pa.R.C.P. 403. However, it should be noted that it has been held that where there is a technical defect in service by a Marshal, but the return leads the plaintiff to believe that service has been properly executed, the action will not be dismissed for improper service of process if the defendant has actual notice of the suit and suffers no prejudice from the technical defect in service. *Jordan v. United States,* 694 F.2d 833 (D.C.Cir.1982). There is no indication anywhere in this case that defendant Jerilynn Edwards Johnson has actual notice of the suit. The court has grave doubts as to whether defendant Jerilynn Edwards Johnson has been served with process, and thus the court will enter no orders affecting her rights on the current state of the record.

3. Apparently, these additional loans are not related to the loan subject of the original complaint and they are not SBA loans. Therefore, any claim related to these additional loans would amount to a permissive counterclaim and Pioneer Bank would have to show that these claims are within the Court's jurisdiction. See *Dinces v. Robbins,* 604 F.Supp. 1021, 1027 (E.D. Pa.1985) (permissive counterclaims require an independent basis of jurisdiction).

4. Pioneer Bank also submitted the affidavits of Donald Hoyle and John Wiedman, Senior Vice President and Assistant Cashier, respectively, at Pioneer Bank at the time the SBA loan was made by Pioneer Bank to Edwards Brothers.

Bank to Edwards Brothers in the amount of six hundred and fifty thousand dollars ($650,000.00). This loan was secured by a first mortgage on a property in Lackawanna County, Pennsylvania, upon which a slaughterhouse was to be constructed with the loan proceeds.[5] The loan was further secured by the personal guaranties of several members of the Edwards family. Significantly, some of these guarantees were secured by real estate. Delores Edwards and her husband Richard M. Edwards, Sr., now deceased, granted a mortgage to Pioneer Bank on three parcels of real estate located in Benton and Nicholson Townships, Pennsylvania as collateral for their personal guarantee.[6] Jerilynn Edwards and her husband Richard M. Edwards, Jr., now deceased, granted a mortgage to Pioneer Bank on two parcels of real estate located in Benton Township, Pennsylvania as collateral for their personal guarantee. In addition, paragraph 3(c) of the loan agreement required that Richard M. Edwards, Jr. and John Edwards each obtain life insurance in the amount of three hundred thousand dollars ($300,000.00).

On March 10, 1974, Richard M. Edwards, Jr. died. At the time of his death, Richard M. Edwards, Jr. maintained insurance on his life in the amount of approximately five hundred thousand dollars ($500,000.00). As a result of the loan, three hundred thousand dollars ($300,000.00) of this was assigned to Pioneer Bank. The balance of the life insurance proceeds was the property of the beneficiary, John Edwards. At the request of John Edwards, Pioneer Bank and the SBA agreed to release the life insurance proceeds for use as working capital for Edwards Brothers.[7]

In November of 1977, Edwards Brothers declared bankruptcy and consequently defaulted on the loan.[8] On August 3, 1983, the servicing of the loan and all of the rights, responsibilities and obligation of Pioneer Bank were assigned to the SBA. Subsequently, the SBA made a written demand upon all of the defendants informing them that the Note was in default and that as guarantors they were liable for the principal and interest due on the Note in accordance with the terms of the guaranties they had executed. Despite the SBA's repeated demands, the defendants continued to refuse to pay the amount owing on the Note.

While the defendants admit to the essential averments in the complaint, i.e. that Edwards Brothers has defaulted on the loan and that a mortgage and personal guaranties were given as security for said loan, they deny liability on the grounds that the SBA breached its fiduciary and good faith duty to them in connection with the maintenance and use of the collateral. Specifically, the defendants maintain that the SBA violated its duty owed to them by failing to 1) maintain properly and attempt to sell the slaughterhouse property which was mortgaged as security for the loan and 2) apply the proceeds from the life insurance policy of Richard Edwards, Jr. to the amounts owing on the loan.

1) $266,579.85 deposited to Edwards Brothers account No. 026–424–6;
2) $261,439.04 used to pay off various commercial loans of John Edwards which were made against the proceeds of the life insurance policy; and
3) $30,263.92 SBA payment.
John Edwards sought the permission of Pioneer Bank to transfer the proceeds of the life insurance policies to Edwards Brothers as working capital. The distribution of funds from the Certificates of Deposit was approved by the SBA as set forth in a letter from William B. McMullen, loan officer, dated May 11, 1977.

5. In 1980, Pioneer Bank initiated an action to execute on certain junior liens it held on the slaughterhouse property. Contrary to the defendants' assertions, this 1980 action was not instituted by the SBA, nor did it involve the $650,000.00 participation loan.

6. Delores and Richard M. Edwards, Sr. are the parents of John and Richard M. Edwards, Jr.

7. John Edwards immediately borrowed additional working capital against the life insurance proceeds not assigned to Pioneer Bank. The life insurance proceeds were subsequently placed into Certificates of Deposit in the name of John Edwards which earned interest from May 9, 1974 to January 4, 1975, when the proceeds of the Certificates of Deposit plus interest were applied as follows:

8. One of the default provisions in the Note was triggered by the bankruptcy of Edwards Brothers.

The relevant sections of the personal guaranties executed by the defendants John and Delores Edwards state as follows:

The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement the debtor or any other party and lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

\*　　\*　　\*　　\*　　\*　　\*

(d) To consent to the substitution, exchange or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange or release shall be of the same or of a different character or value than the collateral surrendered by Lender.

The guaranty further states:

The obligations of the Undersigned hereunder and the rights of the Lender in the collateral shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender ... by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste or loss by fire, theft, or otherwise of any of the collateral, unless such deterioration, waste or loss be caused by the willful act or willful failure to act of Lender.

## III.　STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Conti-*

*nental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

As set forth above, it is undisputed that Delores and John Edwards executed personal guaranties in conjunction with the SBA loan made to Edwards Brothers by Pioneer Bank. It is also undisputed that Edwards Brothers has defaulted on this loan. Therefore, the only legal issue before this Court is whether the claims asserted by Delores and John Edwards in their counterclaim nullify the legal effect of their unconditional personal guaranties.[9]

## IV.　DISCUSSION

### A.　*Waiver of Defenses.*

■ The defendants argue that they are relieved of their obligations under the guaranty agreements due to, inter alia, the failure of the SBA and/or Pioneer Bank to maintain properly the slaughterhouse prop-

---

9. Since the claims asserted by the Edwards' against the SBA and Pioneer Bank, and vice versa, are essentially identical, this is the only issue before the Court.

erty and the misapplication of the proceeds from life insurance of Richard Edwards, Jr. The defendants allege that the actions or failure to act by the SBA and Pioneer Bank where this collateral was concerned were willful and intentional, and caused substantial deterioration to the collateral which would otherwise have had sufficient value to pay the loan in full.

Numerous courts have reviewed the personal guaranty forms which the defendants signed and have concluded that it is an absolute and unconditional guaranty releasing a guarantor from liability only if he can demonstrate that the SBA willfully caused deterioration, waste or loss of the collateral. See *United States v. Mallett,* 782 F.2d 302 (1st Cir.1986); *United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843 (10th Cir.1986); *United States v. Meadors,* 753 F.2d 590 (7th Cir.1985); *United States v. Kukowski,* 735 F.2d 1057 (8th Cir.1984); *First National Park Bank v. Johnson,* 553 F.2d 599 (9th Cir.1977); *United States v. Proctor,* 504 F.2d 954 (5th Cir.1974); *United States v. Wideman,* 626 F.Supp. 469 (M.D.Pa.1985).

"[I]ntentional injury is the appropriate definition of 'willfulness' under the SBA's personal guaranty agreement." *United States v. Lair,* 854 F.2d 233, 236 (7th Cir. 1988). "Willful, at the very least, implies an intent to bring about deterioration in the specific collateral." *United States v. Wideman,* supra, at 471, quoting, *United States v. Slezak,* 543 F.Supp. 63 (N.D.Iowa 1981).

> [I]n order to establish a 'willful act or willful failure to act,' by the SBA under the guaranty agreement, a guarantor must allege more than a gross neglect of a known duty.' A guarantor seeking to establish 'willfulness' under this guaranty agreement must allege 'a purpose by the SBA to diminish the value of the

security in order to intentionally injure the defendants.'

*United States v. New Mexico Landscaping, Inc.,* supra, at 848, quoting *Austad v. United States,* 386 F.2d 147, 151 (9th Cir. 1967).

Defendants simply have failed to offer any evidence which would tend to show that the actions of the SBA or Pioneer Bank were intended to result in injury to the guarantors.[10] Therefore, summary judgment will be granted in favor of the SBA and Pioneer Bank on this issue.

**B.** *Waiver of Notice or Consent to the Application, Release or Disposition of Collateral.*

■ Under the terms of the guaranty agreements the defendants granted to the "Lender full power, in its uncontrolled discretion and without notice to the undersigned, ... to deal in any manner with the [l]iabilities and the collateral." In addition the defendants consented "to the substitution, exchange or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange or release shall be of the same or of a different character or value than the collateral surrendered by Lender."

In cases involving similar actions to recover on SBA loan guaranties, courts have reviewed language similar or identical to the foregoing language and held that it constitutes a valid waiver on the part of the guarantor to notice or consent to the application, release or disposition of the collateral. *United States v. New Mexico Landscaping, Inc.,* supra; *United States v. Kukowski,* 735 F.2d 1057 (8th Cir.1984); *United States v. Southern Cycle Accessories, Inc.,* 567 F.2d 296 (5th Cir.1978); *United States v. Bertie,* 529 F.2d 506 (9th Cir.

---

**10.** In their brief, defendants argue that "[t]he testimony of John Edwards at his deposition, along with the very substantial decreases in the appraisal of the slaughterhouse property in a relatively short period of time and the testimony of various SBA and/or Bank officials indicating the proceeds of the life insurance policies were not applied to reduce the SBA loan are sufficient allegations to show intentional injury un-

der the *Lair* standard." However, they fail to point to any specific evidence in the record which could serve as proof of an intent to injure the defendants. See *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273 (when opposing a motion for summary judgment a party cannot rely on self-serving conclusions, unsupported by specific facts in the record).

1976); *United States v. Wideman*, supra; *United States v. Kurtz*, 525 F.Supp. 734 (E.D.Pa.1981), aff'd mem., 688 F.2d 827 (3rd Cir.1982).

The defendants claim that these cases fail to consider the applicability of the Pennsylvania Uniform Commercial Code. More specifically, the defendants argue that they are relieved of their obligations under the guaranty agreement because the SBA and/or Pioneer Bank failed to dispose of the slaughterhouse property in a commercially reasonable manner. See 13 Pa.C.S.A. § 9504(c) (every aspect of the disposition of collateral including the method, manner, time, place and terms must be commercially reasonable). However, in Pennsylvania, transactions involving a security interest in real property are not covered by § 9504(c). 13 Pa.C.S.A. § 9104(10); *In re Carr*, 18 B.R. 794, 795 (Bankr.E.D. Pa.1982). Consequently, the defendants have not asserted a valid defense and summary judgment on this issue will be granted in favor of the SBA and Pioneer Bank.

### C. Breach of Fiduciary Duty.

█ The defendants also claim that the manner in which the SBA and Pioneer Bank dealt with the collateral constitutes a breach of fiduciary duty. As the Court stated in its Order of November 6, 1990:

The United States also argues that the counterclaim should be dismissed because, as a matter of law, no fiduciary duty is deemed to exist between a lender and a borrower. This argument is based on the supposition that there is no confidential relationship between a lender and borrower, which is a prerequisite for the finding of a fiduciary duty. The United States relies on *Federal Land Bank of Baltimore v. Fetner*, 269 Pa.Super. 455, 410 A.2d 344 (1979), for this proposition. However, the court in *Fetner* stated that *"ordinarily*, the relationship between a borrower and lender does not create a confidential relationship" *Id.* at 461, 410

A.2d at 348 (emphasis added). This indicates that under certain circumstances a fiduciary duty may exist between a borrower and lender. "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3rd Cir.1979), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The defendants argue that a confidential relationship was created because John Edwards was in daily contact with Pioneer Bank, was regularly permitted by the bank to carry overdrafts and consulted with bank officers to resolve his business problems.[11] They also argue that a confidential relationship is further evidenced by the release of the proceeds from the insurance on the life of Richard Edwards, Jr. to John Edwards to be injected into Edwards Brothers as working capital.

Regardless of John Edwards' "banking relationship" with Pioneer Bank, the defendants simply have failed to show the type of relationship which would create a fiduciary duty. At his deposition, John Edwards stated unequivocally that he made all of the corporate decisions in the daily operation of Edwards Brothers. Likewise, he also testified that it was he who requested the use of the insurance proceeds as working capital for Edwards Brothers.

Therefore, despite the defendants' contention that a relationship beyond that of debtor and creditor existed between themselves and the SBA and/or Pioneer Bank, they have failed to uncover any evidence which could create a confidential relationship in the instant action.

### D. Statute of Limitations.

█ The SBA and Pioneer Bank both argue that the defendants' counterclaims

---

**11.** It should be noted that the defendants' contentions are not supported by the record. While they claim that these facts concerning the relationship between Pioneer Bank and Edwards Brothers are based on the deposition testimony of John Edwards, they have failed to submit the relevant pages of the deposition transcript. The only excerpts from the deposition of John Edwards in the Court's files are those submitted by the SBA and Pioneer Bank.

are time-barred. However, in view of the disposition of the defendants' claims, there is no need for the Court to address this issue. The defendants have also presented an argument based on the statute of limitations. They claim that the action by the SBA is time-barred by 28 U.S.C. § 2415. This statute provides that "every action for money damages brought by the United States ... or agency thereof which is founded on any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a). The statute further provides that "[n]othing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property." 28 U.S.C. § 2415(c).

Accordingly, since the SBA did not file its claim until February 23, 1990, more than six years after August 3, 1983, the date Pioneer Bank assigned to the SBA all of its right, title and interest in the Note and supporting agreements, the SBA's claims for money damages are time-barred. See *Federal Deposit Insurance Corp. v. Hinkson*, 848 F.2d 432, 435 (3d Cir.1988) (statute of limitations on contractual claim by the United States begins to run on the date the claim is acquired by the government agency). However, due to the exemption provided by § 2415(c), the SBA's action insofar as it seeks to foreclose on property securing the debt is not time-barred. See *Cracco v. Cox*, 66 A.D.2d 447, 414 N.Y.S.2d 404 (1979) (six year limitations period imposed on every contract action for money damages brought by the United States did not bar United States' action to foreclose mortgage given to se-

cure a note, even though action on the note was barred).

■ Consequently, summary judgment will be entered in favor of the defendants on the SBA's claim for money damages and in favor of the SBA on its claim insofar as it seeks to foreclose on property securing the loan. The defendants do not, and cannot, argue that the limitations period has run on Pioneer Bank's claims.[12] Therefore, summary judgment will be entered in favor of Pioneer Bank on its claim for money damages based on the SBA loan.

### E. *Damages.*

While the SBA cannot recover money damages based on the guaranties, Pioneer Bank claims to have some right to a portion of the amount owing on the Note. However, since Pioneer Bank assigned all of its rights to the loan to the SBA on August 3, 1983, it is unclear exactly what the rights of Pioneer Bank are where this loan is concerned. In addition, a discrepancy in the pleadings makes it difficult to determine the amount due Pioneer Bank. A review of the SBA's complaint and Pioneer Bank's counterclaim reveals that each sets forth different dollar amounts for the principal, interest and total amount due on the loan. Due to this inconsistency, counsel for Pioneer Bank shall submit a memorandum to the Court setting forth, in detail, the amounts due Pioneer Bank by Delores and John Edwards as guarantors of the SBA loan made by Pioneer Bank to Edwards Brothers.[13]

We therefore enter the accompanying order.

---

**12.** The defendants did not assert the statute of limitations as an affirmative defense in their answer to Pioneer Bank's counterclaim, and they have not filed a motion to dismiss based on the limitations period. Therefore, the defendants have waived any statute of limitations defense as against Pioneer Bank. See *Wade v. Orange County Sheriff's Office*, 844 F.2d 951 (2d Cir.1988) (contention that all or part of action is barred by statute of limitations is waived if not raised by defendant in answer); *United States v. Golden Acres, Inc.*, 684 F.Supp. 96 (D.Del.1988) (Defendants waived statute of limitations de-

fense by raising issue for the first time in their reply brief eleven days before trial).

**13.** Although this memorandum resolves all of the issues relating to Delores and John Edwards' liability as guarantors of the SBA loan, several claims remain unresolved. These include all claims relating to the defendant Jerilynn Edwards Johnson and Pioneer Bank's claims relating to the additional non–SBA loans made to Edwards Brothers and John Edwards.

## ORDER

For the reasons stated in the accompanying memorandum it is Ordered that:

1. The motion for summary judgment filed on December 20, 1990 by the plaintiff and counterclaim defendant United States, on behalf of its agency, the Small Business Administration, is granted in part and denied in part.

2. The motion for summary judgment filed on December 20, 1990 by the third party defendant and counterclaim plaintiff Pioneer National Bank is granted.

3. The Clerk of Court is directed to enter judgment:

a. in favor of the plaintiff United States and against defendants Delores Edwards a/k/a Dolores Edwards and Delores Edwards as executor of the estate of Richard M. Edwards, Sr. on the mortgage foreclosure action contained in Count One of the Complaint.

b. in favor of the plaintiff United States and against defendant John W. Edwards as executor of the estate of Richard M. Edwards, Jr. in the mortgage foreclosure action contained in Count Two of the Complaint.

c. in favor of defendants Delores Edwards a/k/a Dolores Edwards and Delores Edwards as executor of the estate of Richard M. Edwards, Sr. and against the plaintiff United States in the action for money damages based on the guaranty agreements signed by the defendants contained in Count One of the Complaint.

d. in favor of defendant John W. Edwards as executor of the estate of Richard M. Edwards, Jr. and against the plaintiff United States in the action for money damages based on the guaranty agreements signed by the defendants contained in Count Two of the Complaint.

e. in favor of the counterclaim defendant United States and against the counterclaim plaintiffs Delores Edwards a/k/a Dolores Edwards, Delores Edwards as executor of the estate of Richard M. Edwards, Sr. and John W. Edwards as executor of the estate of Richard M. Edwards, Jr.;

f. in favor of third party defendant Pioneer National Bank and against third party plaintiffs Delores Edwards a/k/a Dolores Edwards, Delores Edwards as executor of the estate of Richard M. Edwards, Sr. and John W. Edwards as executor of the estate of Richard M. Edwards, Jr.; and

g. in favor of counterclaim plaintiff Pioneer National Bank and against counterclaim defendants Delores Edwards a/k/a Dolores Edwards, Delores Edwards as executor of the estate of Richard M. Edwards, Sr. and John W. Edwards as executor of the estate of Richard M. Edwards, Jr.

4. Within twenty days from the date of this Order counsel for counterclaim plaintiff Pioneer National Bank shall submit to this Court a supplemental memorandum setting forth:

a. the details of its claim to a portion of any payments to be made on the SBA loan including its theory of liability, in view of the assignment of its rights to the loan to the SBA, and a detailed account of the amounts due on the loan to both Pioneer Bank, if any, and the SBA.

b. the bases for the Court's jurisdiction over their permissive counterclaims relating to other loans made to John Edwards and Edwards Brothers.

5. Within ten days from the date of the filing of Pioneer National Bank's supplemental memorandum, counterclaim defendants Delores Edwards a/k/a Dolores Edwards, Delores Edwards as executor of the estate of Richard M. Edwards, Sr. and John W. Edwards as executor of the estate of Richard M. Edwards, Jr. may file a responsive memorandum.