United States Court of Appeals,

Fifth Circuit.

No. 92–2279

Summary Calendar.

UNITED STATES of America, Plaintiff–Appellee,

v.

ALPHAGRAPHICS FRANCHISING, INC., Defendant–Appellant.

Sept. 29, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, KING, and GARWOOD, Circuit Judges.

PER CURIAM:

"Words pay no debts"[1]

This case is about a failed loan, guaranteed by the Small Business Administration ("the SBA"). Appellant Alphagraphics Franchising, Inc. ("Alphagraphics"), another guarantor of the loan, claims that the SBA caused the deterioration of collateral securing the loan by willfully failing to maintain it. We affirm.

I.

When, in the summer of 1987, Kenneth Babbit defaulted on his loan from Southwestern Commercial Capital ("Southwestern"), the SBA, which had guaranteed the loan, purchased the note from Southwestern.[2] The SBA conducted an auction of some of the collateral securing the loan in August of 1988, but did not sell two significant assets (production copiers) until the following May, nearly two years after Babbit defaulted on the loan. The SBA made a demand on Alphagraphics Franchising, Inc. ("Alphagraphics"), another guarantor of the Southwestern–Babbit note, to recover

---

[1]William Shakespeare, *Troilus and Cressida,* Act III, scene II, line 56 (1601–03).

[2]Babbit filed for bankruptcy at about the same time the note went into default, triggering an automatic stay of all collection enforcement against Babbit and his property.

the deficiency. Under the terms of the guaranty, Alphagraphics' liability for the debt (as guarantor) declined over time.[3] At the time of the demand, Alphagraphics' liability was limited to 50% of the principal, interest, and other sums payable under the note, up to a maximum of $125,000. Because Alphagraphics refused to make any payment, the SBA brought this lawsuit to recover on the guaranty.

Alphagraphics defended on the ground that the SBA failed to sell off collateral (specifically, the two photocopy machines) in a timely fashion and did not properly maintain the machines during the interim. Under the guaranty, the lender (originally Southwestern but later the SBA by virtue of its purchase of the note) was not responsible for any "deterioration, waste, or loss by fire, theft or otherwise of any of the collateral, unless such deterioration, waste, or loss be caused by *the willful act or willful failure to act* of [the SBA]." According to Alphagraphics, the SBA sold the machines for a lower price than the machines could have fetched had they been sold sooner or maintained in the interim. Such conduct, in Alphagraphics' view, amounted to "deterioration ... caused by the ... willful failure to act of [the SBA]."

The district court granted the SBA's motion for summary judgment, concluding that Alphagraphics had not tendered any evidence establishing that the SBA's delay in selling the machines, and failure to maintain them, was "willful" as required by the guaranty. It entered judgment for the SBA in the amount of $137,500: $125,000 under the guaranty plus a 10% surcharge

---

[3]The guaranty provided that Alphagraphics' liability would be limited to:

> 100% of the principal, interest, and other sums payable under the note, up to a maximum of $250,000, for one year from the date of the note;
>
> 50% of the principal, interest, and other sums payable under the note, up to a maximum of $125,000, during the second year from the date of the note;
>
> 25% of the principal, interest, and other sums payable under the note, up to a maximum of $62,500, during the third year from the date of the note;
>
> 10% of the principal, interest, and other sums payable under the note, up to a maximum of $25,000, during the fourth year from the date of the note.

($12,500) under 28 U.S.C. § 3011. Alphagraphics appealed.

## II.

We must review the record to determine whether a material issue of fact was in genuine dispute regarding the SBA's failure to maintain the machines pending their delayed sale. *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1265 (5th Cir.1991) (summary judgment appropriate only if there are no genuine disputes as to material facts). Cognizant that our review of the record is plenary, *id.,* Alphagraphics directs our attention to record evidence establishing that the SBA's failure to act (i.e., maintain the machines) necessarily caused a decline in the ultimate sale price of the collateral. (*See* R. 144–46, 162, 163) Although that evidence does, in fact, establish causation—that the decline in price of the machines is attributable to the SBA's failure to maintain them—it falls short of establishing the requisite intent: that the "deterioration" of the machines was caused by the SBA's "*willful* failure to act."

In construing an identical provision, this court suggested but did not decide "that the term "willful' applied in the context of deterioration of the collateral refers to an act done with "an intent to bring about the deterioration of the property.' " *United States v. Proctor,* 504 F.2d 954, 957 (5th Cir.1974) (quoting *United States v. Houff,* 202 F.Supp. 471, 479–80 (W.D.1962)). The Tenth Circuit, construing the same provision, has adopted that view:

> This court has defined "willful" in a civil context as an "intentional misdeed or such gross neglect of a *known duty* as to be the equivalent thereof." Any legal *duty* on the part of the SBA to protect the collateral from "deterioration, waste, loss by fire, theft or otherwise," however, was expressly waived in the guaranty agreement. Therefore, in order to establish a "willful act or willful failure to act," by the SBA under the guaranty agreement, a guarantor must allege more than "gross neglect of a known duty." ... [It] must allege "a purpose by the SBA to diminish the value of the security in order to intentionally injure the defendants.

*United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843, 847–48 (10th Cir.1986) (citations

omitted).[4]  We now do the same.

Under the terms of *this* guaranty, Alphagraphics waived its right to hold the lender (ultimately the SBA) liable for the deterioration of the collateral.  *See New Mexico Landscaping,* 785 F.2d at 847.  The SBA was not responsible for the deterioration of the machines unless it failed to maintain them with the intent to cause harm to the collateral.  *See id.* at 847–48.  There being no evidence in this record to that effect, we conclude that the district court correctly entered summary judgment on that ground.[5]

### III.

 We also find no error in the district court's imposition of the 10% surcharge under 28 U.S.C. § 3011, which provides:

**§ 3011. Assessment of surcharge on a debt**

 **(a) Surcharge authorized.**—In an action or proceeding under Subchapter B or C, and subject to subsection (b), the United States is entitled to recover a surcharge of 10% of the amount of the debt in connection with the recovery of the debt, to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt.

Alphagraphics contends that the provision cannot apply to it because it was a guarantor, not a debtor.[6]  However, the statute does not limit recovery by the SBA to debtors alone.  It provides for a 10% surcharge "in connection with the recovery of the debt."  The term "debt" is defined as "an amount that is owing to the United States on account of a direct loan, *or loan* insured or *guaranteed*

---

[4]*Cf. FDIC v. Coleman,* 795 S.W.2d 706, 708–09 (Tex.1990) (no duty under statutory or common law, state or federal, to foreclose a lien expeditiously);  *Clay v. FDIC,* 934 F.2d 69 (5th Cir.1991) (same, citing *Coleman*);  *see also FDIC v. Myers,* 955 F.2d 348, 350 (5th Cir.1992) (no duty of good faith and fair dealing under Texas law, citing *Coleman* ).

[5]We summarily reject Alphagraphics' effort to introduce parol evidence on the ground that the limitation is ambiguous or that the SBA's demand was somehow defective.  Appellant's Opening Brief at 11–16.

[6]Our research has disclosed not a single case interpreting § 3011.  Perhaps that comes as no surprise since the statute did not take effect until 1991.

*by the United States.*"  28 U.S.C. § 3002(3)(A).  The Southwestern–Babbit note was "guaranteed by the United States," *id.,* and, thus, the SBA could recover the 10% surcharge from Alphagraphics "to cover the cost of processing and handling the litigation and enforcement ... of the claim for such debt."  28 U.S.C. § 3011.

## IV.

With these words, we affirm the district court's judgment in favor of the SBA.