UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,

v.

Joe F. JONES, Defendant-Appellee, Cross-Appellant.

No. 82–8532.

United States Court of Appeals, Eleventh Circuit.

June 24, 1983.

Helene M. Goldberg, David R. Kohler, Washington, D.C., for plaintiff-appellant, cross-appellee.

Edward E. Carter, James C. Watkins, Doraville, Ga., for defendant-appellee, cross-appellant.

Before FAY, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

The United States of America, Small Business Administration (hereinafter SBA) appeals from the judgment of the district court that Joe F. Jones, a private guarantor of an SBA guaranteed loan is entitled to pro rata contribution from SBA in an action by the SBA to recover the balance of a defaulted loan. Jones, on cross appeal, contends that Jones was released from the guaranty obligation due to SBA's conduct and that Jones is entitled to credit on interest received by the SBA. Because we agree with the SBA that federal law pre-empts state law in SBA transactions, we reverse and remand.

## FACTUAL BACKGROUND

The facts in this case are uncontested. In early 1976, J.D. Hatchery Co., a restaurant operating in Atlanta's Omni, sought a loan from Fulton National Bank of Atlanta. The bank began arrangements with the SBA to guarantee 90% of the loan pursuant to a deferred participation loan guaranty, an arrangement which all the participants in the loan, including Joe F. Jones, were well aware. The bank also secured an unconditional guaranty of Joe F. Jones,[1] Vice President and thirteen percent shareholder of J.D. Hatchery Co. in April 1976.[2] Jones, however, refused to sign an SBA Form No. 148 which makes explicit the fact that the undersigned "is not a co-guarantor with the SBA, and shall have no right of contribution against SBA." Nevertheless, in August 1976, the bank loaned J.D. Hatchery $178,000.00 and the SBA guaranteed 90% of the loan.

Two years later, J.D. Hatchery Co. was in default on its loan with the bank. On or about October 10, 1978, the bank assigned all of its rights under the note, guaranties and other loan documents to the SBA. The SBA made demand on Jones for payment of the debt. Thereafter, arrangements were made to sell the assets of the restaurant pledged as collateral for the debt, with Jones participating in the sale which netted $42,000.00. The SBA then instituted the present action in district court alleging Jones was jointly and severally liable on the past due and unpaid balance of the note.

## PROCEEDINGS IN DISTRICT COURT

In district court, Jones alleged he was a co-guarantor along with the SBA and that such status affects the obligations he has to the SBA and the SBA's status as an assignee of the bank. The district court noted that Jones did sign the guarantyship agreement in April 1976, see note 1, supra, but did not sign SBA Form 148 with its explicit language regarding SBA's status. Applying Georgia law, the district court construed the "Loan Guaranty Agreement (Deferred Participation)" between the bank and the SBA to be a guaranty agreement rendering the SBA a co-guarantor and en-

---

1. The guaranty signed by Jones provides in pertinent part that:

This is a continuing guaranty and shall remain in force until a written notice revoking it has been received by the Bank; but such revocation shall not release the guarantor from its guaranty of all obligations of the principal (as hereinbefore defined) then in existence, or from any renewals or extensions thereof, in whole or in part.

. . . .

This guaranty is made subject to all the terms, conditions, agreements, or stipulations contained in the notes evidencing the obliga-

tions hereby guaranteed, and said guarantor further agrees that the terms, conditions and provisions of any notes which may be executed by the principal to evidence obligations in the future incurred, shall simultaneously with the execution of such notes, become a part of this guaranty. . . .

(R. at 332).

2. The bank also obtained three other guarantors. Two of these are in personal bankruptcy. The third, John D. Hannah, was dismissed from this action by the district court for lack of personal jurisdiction.

tered summary judgment in favor of the SBA only to the extent of Jones' proportionate share of the indebtedness.

In addition to the SBA's inexcusable laxity in not obtaining an executed SBA Form 148 from Jones, the SBA neglected to adequately brief the district court on the law. While the SBA vaguely noted that federal law should apply, it never directed the district court's attention to the applicable federal regulations. On this appeal, the SBA, finally and vigorously, contends that federal law pre-empts state law.

Based on regulations not brought to the district court's attention and a case decided by the United States Supreme Court eight months after the district court rendered its decision, we conclude that the district court erred in applying state law.

### PRE–EMPTION

The Supreme Court has recently had occasion to elucidate the pre-emption doctrine in *Fidelity Federal Savings and Loan Association v. de la Cuesta,* —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). In *de la Cuesta,* the Court considered the pre-emptive effect of a regulation issued by the Federal Home Loan Bank Board permitting federal savings and loan associations to use "due-on-sale" clauses in their mortgage contracts and held that the federal regulation pre-empted conflicting limitations imposed by the states. The Court noted that pre-emption "may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" —— U.S. at ——, 102 S.Ct. at 3022, *quoting Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The Court also stated:

> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accom-

plishment and execution of the full purposes and objectives of Congress."

—— U.S. at ——, 102 S.Ct. at 3022. [citations omitted].

In 1958, Congress created the SBA to implement the policies of Chapter 14A, Aid to Small Business, 15 U.S.C. § 631 *et seq.,* and declared that policy to be, in part, that "the Government should aid, counsel, assist and protect, insofar as possible, the interests of small-business concerns in order to preserve free competitive enterprise." 15 U.S.C. § 631. The loan to J.D. Hatchery Co., involved in the present case, was made pursuant to 15 U.S.C. § 636(a) which empowers the SBA to

> make loans to enable small-business concerns to finance plant construction, conversion, or expansion, including the acquisition of land; or to finance the acquisition of equipment, facilities, machinery, supplies or materials; or to supply such concerns with working capital to be used in the manufacture of articles, equipment, supplies, or materials for war, defense, or civilian production or as may be necessary to insure a well-balanced national economy; and such loans may be made or effected either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred basis.

*Id.* Given such policies and powers, it would be a safe assumption that a construction of state law rendering the SBA a co-guarantor bearing the risks of the entrepreneurial enterprise equally with other guarantors would stand as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *de la Cuesta,* —— U.S. at ——, 102 S.Ct. at 3022, *quoting, Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

■ However, there is no need to rely on an assumption, safe or otherwise, in this case, because specific regulations exist and "federal regulations have no less pre-emptive effect than federal statutes." *de la Cuesta,* —— U.S. at ——, 102 S.Ct. 3022. The regulatory pronouncement could not be more specific:

Guarantors of financial assistance, other than the SBA, shall have no rights of contribution against SBA on a guaranteed loan. SBA shall not be deemed to be a coguarantor with any other guarantors.

13 C.F.R. § 122.24(d). To the extent that Georgia law renders the SBA a co-guarantor responsible for a pro-rata share of the original debt, the state law is pre-empted by the federal regulation.[3] Thus, we reverse the district court's granting of the SBA's motion for summary judgment insofar as it ruled that Jones was responsible only for a proportionate share of the indebtedness in the amount of one-third and reverse the entry of judgment against Jones in the amount of $35,575.91.

### THE CROSS APPEAL

On cross appeal, Jones contends that the SBA deficiency claims against him are barred because of SBA's failure to comply with the provisions of the Georgia Uniform Commercial Code in the disposition of the collateral, specifically that the sale was commercially unreasonable and that Jones was not afforded notice of the sale. The applicable federal regulation provides:

> Real and personal property ... hypothecated as security for payment of a loan which is in default may be sold in accordance with the provisions of the note or security instrument whereby such property was hypothecated.

13 C.F.R. § 122.24(a). The note hypothecating the property empowered the note's holder to "sell, assign, and deliver the whole or any part of the collateral at public or private sale, without demand, advertisement or notice of the time or place of sale or of any adjournment thereof, which are expressly waived." (R. at 8). The guaranty signed by Jones makes itself subject to all terms and conditions in the notes evidencing the obligations which it guarantees, see note 1 supra, and thus Jones waived notice of the sale.

Even without such a waiver, however, Jones' claim of lack of notice as well as his contention of commercial unreasonableness must fail as a matter of fact. The district court noted that Jones' attorney stated that Jones had no objection to the sale of the assets and the record on appeal includes two letters so stating, one of which expresses pleasure at the sum received. (R. at 336, 337). Thus, we agree with the district court that Jones was not released from his guaranty by the manner in which the collateral was sold.

The remaining contention advanced by Jones on cross appeal concerns the district court's allocation of the interest and is rendered moot by the decision that the SBA is not a co-guarantor.

Based on the foregoing, the decision of the district court is REVERSED in part, AFFIRMED in part, and REMANDED for the entry of final judgment against Joe F. Jones for the full deficiency.

---

3. There is no contention that the promulgation of this regulation exceeds statutory authority or constitutes an arbitrary act and it does not appear that this regulation is one which Congress would not have sanctioned.