449 So.2d 861 (1984)
The FLORIDA FIRST NATIONAL BANK AT PENSACOLA, Appellant,
v.
Phillip MARTIN and Janet K. Martin, Husband and Wife, et al., Appellees.
No. AO-55.
District Court of Appeal of Florida, First District.
March 27, 1984.
On Rehearing May 10, 1984.
*862 Paul Shimek, Jr., of Shimek & Southerland, Pensacola, for appellant.
*863 H. Edward Moore, Jr., of Sherrill, Moore & Hill, Pensacola, for appellee Pinney.
Kenneth R. Ridlehoover, Pensacola, for appellee Martin.
ZEHMER, Judge.
Appellant, Florida First National Bank at Pensacola, appeals a final summary judgment in favor of appellees on the bank's complaint for "a judgment of deficiency after sale of a security and for foreclosure of additonal security for failure to pay said deficiency." The trial court ruled that the bank is not entitled to a deficiency judgment because the undisputed facts establish that the repossessed property was not disposed of by the bank in a commercially reasonable manner, as required by section 679.504(3), Florida Statutes (1981). We affirm.
The following facts appear to be undisputed in the record. On March 28, 1977, the bank extended a loan to appellee Martin and others pursuant to a security agreement and promissory note executed by Martin and secured by a thirty-one foot boat named "Mariposa." Appellee Pinney endorsed the note and security agreement. Martin made payments to the bank until late 1978, when he defaulted. On January 15, 1979, a representative of the bank, assisted by Pinney, took physical custody of the Mariposa and moved it to another dock specified by the bank. The balance due on the security agreement and note as of January 22, 1979, was $29,143. The bank ordered and paid for a survey of the boat in February 1979 which recommended that the Mariposa be advertised for $28,500 in its then-present condition or, if certain described repair work should be accomplished at minimal cost, for $35,000.
At the time the bank took custody of the boat, Pinney agreed to show it to prospective customers when requested to do so by the bank. Appellant bank ordered and paid for certain repairs. Appellee Pinney assisted in making some of them and, as agreed, showed the boat to a few prospective buyers for the bank until late May or June 1979, at which time the boat was removed, at the Bank's direction, to a new location. The bank continued to maintain custody and control of the Mariposa for the next eighteen months while the boat's physical condition depreciated substantially. Ultimately, in December 1980, the bank sold the Mariposa for $12,300.
The bank's officials testified that this transaction was not handled in accordance with the requirements of the Uniform Commercial Code or the bank's own policies and procedures applicable to repossession of secured property after default. The bank, having taken physical custody of the boat, obtained a survey and appraisal, and ordered and paid for repairs during the period January through May 1979, neglected to send the usual notice of repossession to appellees, as debtors, and neglected to otherwise follow normal procedures for the sale and disposition of the boat. Its entire efforts during the two-year period consisted of running a few advertisements in the Pensacola newspaper and showing the boat on a couple of occasions to potential customers, with no success.
Sometime in October 1979, the bank's senior officials learned of the situation and made inquiry of their loan officer in charge, Mr. Golson. Failing to receive an adequate explanation, the bank discharged Mr. Golson. Mr. Franklin was then put in charge of the loan. His investigation of the bank's records as of November 1979 indicated that "this was a repossession; that nothing had been done to comply with the Uniform Commercial Code" and "that nothing ... had been done to serve notice on any of the parties involved that it was a repossession." Mr. Franklin testified at deposition that his predecessor, Golson, had not managed this account properly and had not followed the bank's guidelines. Those guidelines permitted the bank to take custody of secured property and attempt to sell it with the debtor's assistance for thirty days without declaring it a repossession. Failing such sale, under the guidelines the bank was supposed to declare the property repossessed within 120 days, charge the loan to the profit and loss account, and *864 process the repossession in accordance with applicable laws and banking regulations.
In this instance, the bank's officials, after receiving Franklin's report, deliberately elected not to treat its custody of the Mariposa as a repossession but, instead, to file suit against appellees to collect on the note and to foreclose the boat. Suit was filed in December 1979. Once this decision to sue was made, the bank did nothing of substance to sell the Mariposa during the ensuing months because, they explain, of the pendency of the litigation. Finally, notwithstanding the pending litigation, the bank formally notified the appellees by letter dated October 30, 1980, that it was declaring a repossession of the boat and would proceed to sell it at private sale. On December 3, 1980, the Mariposa was sold "as is" at private sale for $12,300, notwithstanding a second survey made in October 1980 which indicated that if $3,000 were spent on repairs, the sale price would exceed $20,000. That survey appraised the boat "as is" at approximately $12,500.
The following January, the bank supplemented its complaint in the pending litigation, acknowledged the sale and sought a deficiency judgment. All appellees defended on the ground that the bank had not disposed of the boat in a commercially reasonable manner and was not entitled to a deficiency judgment. Appellee Pinney also contended that the bank had released him from liability on his endorsement while Golson was in charge of the loan. Both the bank and appellees, conceiving there were no material facts in dispute, moved for summary judgment on their respective claims and defenses. The trial court denied the bank's motion and entered summary judgment for appellees on both grounds of their defenses. This appeal followed.
The bank contends that the granting of summary judgment on the ground that the security was not sold in a commercially reasonable manner was erroneous for several reasons.
The bank contends that it did not repossess the Mariposa until October 1980, when it sent its formal letter to that effect to appellees. Thus, the bank argues, the sales price less than two months later was well within the "as is" appraised value on that date. The bank reasons that in January 1979 it took joint possession with Pinney for the purpose of selling the boat for as much as possible and did not formalize "repossession" of the boat until it sent the appropriate notice to appellees in October 1980.
We find the bank's contention a distinction without substance that is contrary to the undisputed facts. The bank's own records, entitled "Record of Repossession," are dated May 16, 1979, and unambiguously state that the date of repossession of the boat is January 15, 1979. The bank took physical custody and stored the boat at a dock of its own choosing. The bank had the boat surveyed and ordered and paid for certain recommended repairs. The bank retained custody and control of the boat continuously until December 1980. And the bank alleged in its complaint, filed in December 1979, that it had possession of the boat. The fact that Pinney assisted the bank in picking up the boat, repairing it, and showing it to prospective buyers is not inconsistent with the bank's having repossessed the boat, especially since it is undisputed that Pinney had nothing more to do with the boat after May or early June 1979. We hold on the undisputed evidence that, upon taking custody of the boat on January 15, 1979, the bank repossessed the property within the meaning of section 679.503, Florida Statutes (1981), and at that time became obligated by section 679.504(3) to "sell, lease or otherwise dispose of" the collateral "in its then condition or following any commercially reasonable preparation or processing," provided that "disposition including the method, manner, time, place, and terms must be commercially reasonable." Although the bank could have retained the collateral in full satisfaction of the obligation by giving notice of such intention pursuant to section 679.505, it did not give such notice.
Even so, the bank contends that the evidence fails to show it acted unreasonably *865 in this case because the mere passage of time before sale, or the fact that the bank could have received a better price by obtaining a sale at a different time or with a different method, is "not sufficient to establish that the sale was not made in a commercially reasonable manner," citing section 679.507(2). We agree that if the bank's conduct had otherwise been commercially reasonable, then the mere passage of time or failure to obtain a better price would not, standing alone, have meant that the sale violated section 679.504(3). But, as the undisputed facts described above show, the bank's conduct in handling and disposing of this collateral after repossession was not otherwise commercially reasonable. The bank's officials admit to not processing this repossession in accordance with the Uniform Commercial Code or the bank's own guidelines and procedures because the boat, valued at $28,500 or more when repossessed, was sold for $12,300. The bank permitted the physical condition and value of the boat to decline drastically while maintaining sole custody and control of it. The bank retained the property for many months after repossession without initiating its normal repossession procedures, and then consciously and deliberately elected to file litigation to foreclose on property already in its possession. After filing suit, the bank continued to hold the property without taking any further steps to make it saleable at a price approximating its value when seized.
Finally, the bank contends that appellees have either waived or are estopped to claim that the collateral was not disposed of in a commercially reasonable manner. In support of this contention, the bank argues that appellees had the right under section 679.507, Florida Statutes (1981), to protect themselves from the bank's unreasonable disposition of the collateral by obtaining a court order requiring disposition on appropriate terms and conditions and, because appellees had knowledge of the bank's handling of the collateral after repossession and nonetheless did nothing, they became estopped or waived any right to raise the lack of a commercially reasonable sale as a defense. This contention lacks merit for at least three reasons.
First, as appellees correctly point out, the right to commercially reasonable disposition of repossessed property cannot be waived. § 679.501(3), Fla. Stat. (1981). Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12 (Fla. 1st DCA 1981); Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla. 1st DCA 1977). This case does not involve a "compulsory disposition" qualifying as an exception to the nonwaiver rule provided in that section. § 679.505, Fla. Stat. (1981).
Second, the bank did not plead either waiver or estoppel by way of avoidance of the affirmative defenses raised by appellees. Florida Rule of Civil Procedure 1.100(a) provides that if an answer "contains an affirmative defense and the opposing party seeks to avoid it, he shall file a reply containing the avoidance." Rule 1.110(d) includes waiver and estoppel as matters in avoidance. The record contains no motion to amend or other attempt to properly plead this issue in the trial court prior to the hearing on summary judgment. Accordingly, there is no basis for granting relief to appellant bank on these grounds on this appeal. Dober v. Worrell, 401 So.2d 1322 (Fla. 1981).
Third, a debtor need not first seek affirmative relief under section 679.507 as a prerequisite to asserting lack of commercially reasonable disposition of collateral. Once the secured party repossesses collateral to secure payment of the debt after default, that party is under a duty of care to protect and preserve the collateral and dispose of it in a manner likely to bring the full fair value. §§ 679.501(2) and 679.207(1), Fla. Stat. (1981). See generally, 29 Fla.Jur., Secured Transactions, §§ 124-126.
The trial court ruled that, as a result of the bank's failure to dispose of the boat in a commercially reasonable manner, the bank was not entitled to any deficiency *866 judgment against appellees, citing Barnett Bank of Tallahassee v. Campbell, supra, and Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla. 2d DCA 1973). We find no reason to disturb this ruling. Deficiency judgments after repossession of collateral are in derogation of the common law, and any right to a deficiency accrues only after strict compliance with the relevant statutes. Turk v. St. Petersburg Bank & Trust Co., supra, at 536. When seeking a deficiency judgment, the secured party (here, the bank) has the burden of proving that the sale was conducted in a commercially reasonable manner or in accord with reasonable commercial practices, as required by statute, once the debtor has raised this issue. Bank of Oklahoma v. Little Judy Industries, 387 So.2d 1002, 1004-1005 (Fla. 3d DCA 1980). Since the undisputed evidence established that the bank had not and could not carry that burden, there was no error in denying the deficiency judgment as a matter of law on the ground that the sale was not commercially reasonable. Cf., Schatten v. C.I.T. Corp., 335 So.2d 572 (Fla. 3d DCA 1976).
Appellant contends that Barnett Bank of Tallahassee v. Campbell, supra, and Turk v. St. Petersburg Bank & Trust Co., supra, cited in the trial court's order, are inapplicable because those decisions involved the failure to give notice as required by section 679.504(3) rather than the failure to conduct a commercially reasonable sale. In both cases, as well as in Barnett v. Barnett Bank of Jacksonville, supra; Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41 (Fla. 4th DCA 1975), and Washington v. First National Bank of Miami, 332 So.2d 644 (Fla. 3d DCA 1976), the Florida courts aligned themselves with the rule that failure to comply with the statutory notice requirements precludes any action for deficiency against the debtors. These decisions support the trial court's ruling unless there is some rational basis to differentiate in this case between failing to comply with the statutory notice requirements and failing to comply with the statutory requirements for commercially reasonable disposition of the repossessed property. We see no reason to make such a distinction under the facts of this case. See, generally, Motorola Communications & Electronics v. National Patient Aids, 427 So.2d 1042 (Fla. 4th DCA 1983).
We note that in Bank of Oklahoma v. Little Judy Industries, supra, the Third District Court adopted the rule that, notwithstanding the lack of a commercially reasonable sale, a secured creditor may still be entitled to a deficiency judgment if the secured creditor shows that the fair value of the collateral at the time of seizure is less than the amount of the outstanding indebtedness. Apparently the value of the repossessed aircraft in that case was less than the indebtedness at the time of repossession.
Even though the rule approved in Bank of Oklahoma may appear to be in conflict with the rule followed in our decision in this case and in Barnett Bank of Tallahassee v. Campbell, supra, and Barnett v. Barnett Bank of Jacksonville, supra (both denying the right to any deficiency judgment after failure to comply with the requirements of section 679.504(3)),[1] we need not now address such apparent conflict because of factual distinctions between this case and Bank of Oklahoma and the bank's failure to argue the applicability of that rule.
Here, the evidence shows that the amount of indebtedness in January 1979, when the boat was repossessed, was $29,143; and the bank's survey, made that same month, recommended an "as is" value of $28,500 or, if some repair work were done, a value of $35,000. Some repair work was done by Pinney. The bank has not asked for remand and determination of deficiency in accordance with the rule approved in the Bank of Oklahoma decision, apparently because the value of the boat when seized in January 1979 was approximately equal to or greater than the then-outstanding *867 indebtedness and, at best, little, if any, recovery would accrue to the bank on that theory. Having failed to cite Bank of Oklahoma, the bank has waived this argument and is not now entitled to reversal on that theory.
Having concluded that as a matter of law the bank was not entitled to a deficiency judgment against any of the appellees, we find it unnecessary to consider appellant's points relating to the release of appellee Pinney.
AFFIRMED.
BOOTH and SMITH, JJ., concur.

ON MOTION FOR REHEARING
ZEHMER, Judge.
The Florida First National Bank at Pensacola moves for rehearing on the ground that our not reviewing the appealed issue concerning the bank's release of Pinney "has resulted in confusion and possible prejudice to the bank because there is still a pending counterclaim in existence for abuse of process, which rests to a large extent upon the question of whether Pinney was released by the bank," and that leaving this issue unresolved may "result in the trial court's previous finding (that the release was valid) becoming the law of the case, thus preventing appellant the right of an appeal as to that crucial issue." Since this issue is ripe for determination on this appeal and will substantially affect further proceedings between these parties, we grant rehearing to address the questions raised.
We hold that the trial court erred in ruling as a matter of law that Pinney had been released by the bank because Pinney has failed to conclusively demonstrate the absence of any material issues of fact concerning the validity of the release. It is well recognized that genuine issues of fact may arise even on undisputed facts where different inferences may reasonably be drawn by the trier of fact. Aldridge v. Yellow Cab of Gainesville, Inc., 448 So.2d 1129 (Fla. 1st DCA 1984); Gravas v. The Mackle Company, 444 So.2d 1159 (Fla. 3d DCA 1984). The record shows that material facts are in dispute concerning the authority of the bank's officer to release Pinney and the sufficiency of the document relied upon to constitute a valid release, and these issues cannot be resolved on summary judgment but must be submitted to the trier of fact. Benson v. Atwood, 177 So.2d 380, 382 (Fla. 1st DCA 1965); Taco Bell of California v. Zappone, 324 So.2d 121, 123 (Fla. 2d DCA 1976).
With this additional clarification, we adhere to our original opinion affirming the final summary judgment.
BOOTH and SMITH, JJ., concur.
NOTES
[1] See, Mack Financial Corp. v. Scott, 100 Idaho 889, 606 P.2d 993 (1980).