781 So.2d 381 (2000)
TROPICAL JEWELERS, INC., Saul Waksman, Eve Rose Ozeil, Szmul Waksman and Yuda Ozeil, Appellants,
v.
NationsBANK, N.A. (South), a national banking association as successor in interest by merger to Intercontinental Bank, N.A., Appellee.
No. 3D99-119.
District Court of Appeal of Florida, Third District.
January 21, 2000.
*382 Geller, Geller, Beskin, Shienvold, Fisher & Garfinkel and Peggy Fisher (Hollywood); Richard J. Burton, Aventura, for appellants.
Liebler, Gonzalez & Portuondo, P.A. and Juan A. Gonzalez, Miami, for appellee.
Before COPE, LEVY, and GREEN, JJ.
PER CURIAM.
This is an appeal from a final summary judgment entered on the issue of damages against the maker and individual guarantors of two promissory notes. We reverse.

I.
Appellant, Tropical Jewelers, Inc. ("Tropical"), was the maker of two promissory notes totaling $840,000 to Intercontinental Bank, N.A., the predecessor in interest to appellee, NationsBank, N.A. ("bank"). These notes were secured by all inventory, supplies, furniture, fixtures, equipment, and accounts receivable then owned or thereafter acquired by Tropical. Appellants, Saul Waksman, Eve Rose Oziel, Szmul Waksman and Uyda Oziel, executed personal guarantees of Tropical's promissory notes. In the guarantees, the individual guarantors specifically waived, among other things, any rights that they might otherwise have under the Uniform Commercial Code ("UCC"), including the commercial reasonableness of any sale or disposition of collateral by the bank in the event of a default by Tropical. There was no such waiver in the promissory notes executed by Tropical.
Tropical defaulted under the terms of both promissory notes and the bank filed this suit against Tropical and the individual guarantors to collect the unpaid amounts due on the notes. During the *383 pendency of this action, the bank obtained a pre-judgment writ of replevin pursuant to chapter 78, Florida Statutes which allowed it to replevy and liquidate the collateral securing the notes. The bank liquidated the collateral through an independent auction company. The proceeds of the sale were then applied to Tropical's outstanding indebtedness owed on the notes and the bank sought to recover the deficiency amount in this action.
Tropical and the individual guarantors respectively answered this suit and asserted, as affirmative defenses, that the bank had (1) wrongfully repossessed Tropical's assets; (2) failed to handle the liquidation of Tropical's assets in a commercially reasonable fashion; and (3) grossly mishandled Tropical's property, resulting in its unnecessary loss or destruction. Thereafter, Tropical and the individual guarantors collectively filed a counterclaim against the bank based upon the same factual allegations contained in their affirmative defenses. The bank moved for final summary judgment against Tropical and the individual guarantors on the grounds that there were no genuine issues of material fact as to Tropical's default under the promissory notes, and that the affirmative defenses regarding the commercial reasonableness of its disposition of the collateral had been waived by the appellants and was thus unavailable as a matter of law. The motion was granted and this appeal followed.

II.
The appellants first argue that the trial court erred in denying their motion for continuance of the hearing on the motion for summary judgment. A motion for continuance, however, is addressed to the sound judicial discretion of the trial court and absent an abuse of that discretion, that court's decision will not be reversed on appeal. See Fleming v. Fleming, 710 So.2d 601, 603 (Fla. 4th DCA 1998); Talley v. Fain, 692 So.2d 279, 280 (Fla. 5th DCA 1997); Crespo v. Florida Entertainment Direct Support Org., Inc., 674 So.2d 154, 155 (Fla. 3d DCA 1996). The trial court's order denying the continuance reflects that the bank's motion for summary judgment was not heard until five months after its filing; after appellants' former counsel's motion for withdrawal was rescheduled for hearing numerous times; after the appellants were afforded an adequate period of time within which to secure new counsel; and approximately one month after appellants' new counsel filed his notice of appearance. Under these circumstances, we cannot conclude that the denial of appellants' motion for continuance of the summary judgment hearing constituted an abuse of discretion.

III.
We now turn to the merits of this appeal. Tropical and the individual guarantors urge that the trial court erred in entering summary judgment against them on their affirmative defenses that the collateral securing the debt was not disposed of in a commercially reasonable manner by the bank. We agree that summary judgment was improvidently entered.
Under Article 9 of the UCC, upon a debtor's default, a secured creditor is obligated to dispose of the collateral securing the debt in a commercially reasonable manner. See § 679.504(3), Fla. Stat. (1995)[1]; see also Sorrels v. Rebecca's Ice *384 Cream, Inc., 696 So.2d 1313, 1314 (Fla. 2d DCA 1997). Indeed, the right to commercially reasonable disposition of repossessed property cannot be waived by the debtor. See § 679.501(3)(b), Fla. Stat. (1995)[2]; Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12, 13 (Fla. 1st DCA 1981). Tropical did not, and indeed could not, waive the requirement of commercial reasonableness of disposition of collateral.
The summary judgment record reflects that there exists a genuine issue of disputed fact between Tropical and the bank as to whether the collateral was disposed of in a commercially reasonable manner. We thus conclude that the summary judgment entered as to Tropical was error. See Holl v. Talcott, 191 So.2d 40 (Fla.1966).

IV.
In addition to Tropical, the guarantors also challenge the commercial reasonableness of the bank's disposition of collateral. The guarantors present a different legal issue, however, because the guarantees in this case contain language waiving the guarantors' "right to object to the commercial reasonableness of any sale or disposition of collateral."[3] The guarantors argue that this waiver is invalid under the anti-waiver provision of the UCC, § 679.504(3), Fla. Stat., and we agree.
As already stated, a secured creditor must dispose of collateral in a commercially reasonable manner, and this requirement of the UCC cannot be waived by the debtor. See §§ 679.501(3)(b), 679.504(3), Fla. Stat. (1995). The question is whether a guarantor is a "debtor" for Article 9 purposes. The answer is yes.
Article 9 defines "debtor" in part as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral ...." § 679.105(1)(d), Fla. Stat. (1995) (emphasis added).[4] Certainly *385 a guarantor is a person who owes "payment or other performance," id., and this court has already said that the UCC definition of debtor includes guarantors. See Adler v. Key Fin. Servs., Inc., 553 So.2d 284, 285 (Fla. 3d DCA 1989) (stating "definition of `debtor' under UCC includes guarantors"). The First and Fourth Districts have likewise held that a guarantor is a debtor for purposes of this part of the UCC. See Motorola Communications and Elecs., Inc. v. Nat'l Patient Aids, 427 So.2d 1042, 1044 (Fla. 4th DCA 1983); Barnett Bank v. Campbell, 402 So.2d 12, 14 (Fla. 1st DCA 1981); Barnett v. Barnett Bank, 345 So.2d 804, 805-06 (Fla. 1st DCA 1977); Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41, 42 (Fla. 4th DCA 1975). And on the exact issue before us, the First District has concluded, as we do, that the anti-waiver provision of subsection 679.501(3), Florida Statutes, protects guarantors. See Barnett v. Barnett Bank, 345 So.2d at 805-06; Barnett Bank v. Campbell, 402 So.2d at 14.[5]
The practical logic may be illustrated by the following hypothetical example:
Parent guarantees car loan for child. The guarantee contains a waiver of the requirement of commercial reasonableness of disposition of collateral.
Child defaults and bank repossesses the car. If disposed of in a commercially reasonable manner, the car is worth $10,000. For simplicity, assume the loan balance is also $10,000.
Bank president decides to sell car to bank president's relative for $1,000.
In the hypothetical example, sale of a $10,000 car for $1,000 is not commercially reasonable. Under the UCC, the bank would not be allowed to sue the borrower child for the $9,000 deficiency.[6] Since a commercially reasonable disposition of the collateral would have yielded $10,000, and the loan balance was $10,000, it follows that the borrower child owes the bank nothing. See § 679.507, Fla. Stat.; Weiner v. American Petrofina Mktg., Inc., 482 So.2d 1362, 1364 (Fla.1986).
Logically the same analysis should apply to the guarantor parent in the hypothetical example. It would make no sense to say that the bank may recover the $9,000 deficiency from the guarantor parent, even though the bank cannot recover the $9,000 deficiency from the borrower child.
The UCC expresses sound public policy in requiring commercial reasonableness and in prohibiting waiver of that protection. The better view is that these UCC provisions protect the guarantor as well as the borrower. "[I]t would be odd indeed if the Code allowed a creditor to avoid the protections established for debtors merely by taking the readily available step of forcing the debtor's principals to sign personal guarantees." Bank of China v. Chan, 937 F.2d 780, 786 (2d Cir.1991).
Another court has said:
[T]he unconditional guarantor is in a very real sense the debtor. When the probability of deficiency looms after default, the guarantor is the real target of the secured party. It is simply inequitable, therefore, to permit the secured party, who fixes the amount of the guarantor's liability in the first step of the collection effort by repossession and sale, to deny in the face of this economic *386 reality that the guarantor is in fact its debtor. At that point, the guarantor is the only debtor. Furthermore, where the debtor and guarantor are in essence the same entity ... it is equally unjust to allow a creditor to evade the Code duties by merely insisting on a guaranty.
Gambo v. Bank or Maryland, 648 A.2d at 1109 (quoting Ford Motor Credit Co. v. Lototsky, 549 F.Supp. 996, 1004 (E.D.Pa. 1982)); see also Ford Motor Credit Co. v. Thompson Mach., Inc., 649 A.2d 19, 22-23 (Me.1994); May v. Women's Bank, 807 P.2d 1145, 1157-49, 1151 (Colo.1991).[7]
The policy of the UCC is well put in one of the UCC comments:
In the area of rights after default our legal system has traditionally looked with suspicion on agreements designed to cut down the debtor's rights and free the secured party of his duties: no mortgage clause has ever been allowed to clog the equity of redemption. The default situation offers great scope for overreaching; the suspicious attitude of the courts has been grounded in common sense.
Ford Motor Credit Co. v. Lototsky, 549 F.Supp. at 1001 (quoting UCC § 9-501 comment 4) (citation omitted).[8]
The summary judgment is reversed as to the borrower and guarantors and the cause remanded for further proceedings.
COPE and LEVY, JJ., concur.
GREEN, J. (dissenting in part)
I fully concur with everything in the majority opinion save its holding that the trial court erred in entering final summary judgment against the individual guarantors in this case. Where, as here, it is undisputed that these guarantors do not own the secured collateral and executed absolute and unconditional contracts of guaranty in favor of the bank, these guarantors may not properly be deemed "debtors" under the commercial code. The statutory definition of "debtor" found in the code expressly precludes non-owners of the secured collateral from being "debtors" for purposes of the protections contained in section 679.501(3), Florida Statutes (1995). The majority opinion and the decisions upon which it rely simply ignore the code's definition of "debtor". For that reason, as well as the fact that the majority's holding as to the guarantors in this case is completely in conflict with our earlier decision in Von Dunser v. Southeast First National Bank of Miami, 367 So.2d 1094 (Fla. 3d DCA 1979), I respectfully dissent.
Under the code, it is certainly true that the right to commercially reasonable disposition of repossessed property cannot be waived as a matter of law by a "debtor". See § 679.501(3)(b), Fla. Stat. (1995). The code's statutory definition of "debtor" is as follows:
`Debtor' means the person who owes payment or other performance of the *387 obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term `debtor' means the owner of the collateral in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.
§ 679.105(1)(d), Fla. Stat. (emphasis added).
The second sentence of the code's definition of "debtor" specifically deems only the owner of the collateral as being the "debtor" in any provision of the chapter dealing with the collateral. Section 679.501(3), Florida Statutes, prescribing the commercially reasonable disposition of the collateral, is a provision that expressly and exclusively addresses collateral. Therefore, under the code's expressed definition of "debtor", individuals who do not own the secured collateral, such as the guarantors in this case, simply cannot be deemed debtors, as held by the majority, for purposes of the protections afforded in section 679.501(3). The second sentence of the statutory definition of debtor is clear, unambiguous and all encompassing. The courts of this state are "`without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.'" See Oruga Corp., Inc. v. AT & T Wireless of Fla., Inc., 712 So.2d 1141, 1143-44 (Fla. 3d DCA 1998) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)). The majority's attempt, therefore, to judicially limit this second sentence to a situation where a borrower takes out a loan and a third person puts up the collateral, see Maj. Op. at 384 n. 4, is simply unavailing.
Since Article 9 of the code does not specifically address "guarantors", it is indeed unclear whether a guarantor was ever intended to be included within the meaning of "debtor" when that word appears in Article 9. There has been a split of opinion among the courts of various jurisdictions on this key issue. The majority of the federal courts, as well as some state courts, take the position that, as at common law, guarantors differ from debtors, and the defenses of notice and commercial reasonableness may be waived notwithstanding the provisions of UCC section 9-501(3).[1] A substantial number of *388 jurisdictions, mainly state courts, have reached the opposite result.[2]
Most, but certainly not all, of the courts holding that guarantors may not waive the commercially reasonable disposition of repossessed property under the code, have done so under the assumption that a guarantor is a debtor under Article 9.[3] Thus, these courts have found that the guarantor is afforded the same rights and duties as an Article 9 debtor and accordingly, is precluded from waiving said rights.[4] However some astute legal commentators, point to problems with these courts' inclusion of guarantors within the definition of debtor. One such commentator observes:
[T]he language of [UCC] section 9-105(1)(d) does not entirely support such a construction. The first sentence of the section states that a `debtor' is someone who `owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral.' All guaranty agreements are conditional in one sense: the guarantor owes no payment until the principal/debtor has defaulted. Thus, at the time the guaranty agreement comes into existence, there is no absolute duty of payment on the part of the guarantor.
See Note, The Waiver of Defenses by Guarantors in Guaranty Contracts and the Nonwaiver Provisions of the Uniform Commercial Code, 5 Vt. L.Rev. 73, 88-89 (1980) (footnotes omitted); but see Norton v. National Commerce Bank of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538 (1966)(holding that "or other performance" includes a conditional duty of payment within the definition of `debtor.'). Another UCC commentator's response to this language in the code indicates that it was not intended to include a conditional duty of performance:
It is clear that the Code "debtor" must owe something to someone. What *389 he owes will be, of course, a money debt. The suggestion in the definition that he may owe payment or other performance is an illustration of the excessively cautious drafting which mars the Code as a whole, particularly in its definitional sections.
See 1 Grant Gilmore, Security Interests in Personal Property 303 (1965).
Still another scholar observes that it is questionable whether guarantors were ever intended to receive the nonwaiver protection of UCC section 9-501, because the specific grant of nonwaiver protection to "debtors" found in section 9-501(3) is tied, in comment 4 of section 9-501, to common law equity-of-redemption principles.[5]
The long-standing common law rule against clauses that `clog' a debtor's equity of redemption is for the protection of debtors who are in no position to insist that a creditor omit such clauses from the security agreement at the time it is drafted. Thus, the very essence of section 9-501(3) is a policy against allowing creditors to take unfair advantage of debtors by virtue of the unequal bargaining power almost inevitably enjoyed by creditors.
The interests of a guarantor do not share the same historic concerns that have protected debtors from creditors. A guarantor who assumes liability under a guaranty contract in an attempt to help a friend or relative secure credit for example, is not subject to the coercive pressures of a debtor-creditor relationship. Negligent sale of collateral and its effect upon the guarantor is the real issue to be dealt with in construing waiver-of-defense clauses, not any right based upon equity of redemption principles.
See Note, The Waiver of Defenses by Guarantors in Guaranty Contracts and the Nonwaiver Provisions of the Uniform Commercial Code, 5 Vt. L.Rev. 73, 91-92 (1980).
I believe, as do most federal courts and some state courts[6] that guarantors who are not the owners of the secured collateral are not debtors for purposes of section 679.501(3) of the code and that these predefault waiver provisions contained in contracts of guaranty are enforceable by lenders as a matter of law. Indeed, our district so held in our Von Dunser decision, which incidently, was decided after Florida's adaptation of the Uniform Commercial Code.
In Von Dunser, the lender/bank sued the debtor/husband who executed two promissory notes and his estranged wife who was the guarantor. In the guaranty, the wife, among other things, consented to *390 the bank's exchange, surrender, repledge or other dealings with the collateral and waived any notice thereof. Moreover, the contract of guaranty specifically stated, in part, that:
... No act of omission of any kind by the Bank shall affect or impair this guaranty and the Bank shall have no duties to Guarantors. Guarantors hereby agree that their obligations hereunder shall be absolute and primary and shall be complete and binding as to each Guarantor upon this guaranty being executed by him and subject to no conditions precedent or otherwise[.]
367 So.2d at 1096.
The husband defaulted on the notes and the bank filed suit. A default was entered against the husband of the notes after he failed to answer. The guarantor wife did answer and, as in this case, she raised the affirmative defense of the bank's unjustifiable impairment of the collateral. Final summary judgment was entered against the guarantor/wife on this affirmative defense. We affirmed, holding the wife's defense to be inadequate in light of her unambiguous waiver of the bank's duties with regard to the repossessed collateral and expressly stated that:
[U]nder an absolute and unconditional contract of guaranty, as is the subject matter of this appeal, it is no defense that the creditor has lost security or has been negligent in regard to protection of the collateral.
Id. The majority's refusal in this case to similarly enforce the waiver provisions contained in absolute and unconditional contracts of guaranty simply cannot be reconciled with our holding in Von Dunser. Indeed, the lower court relied upon Von Dunser in granting final summary judgment in the bank's favor.
Our supreme court has yet to address this issue. To date, the only other Florida decision which has explicitly held that the right to commercially reasonable disposition of repossessed property cannot be waived under section 679.501(3), Florida Statutes by either the principal debtor or the guarantor is Florida First National Bank at Pensacola v. Martin, 449 So.2d 861 (Fla. 1st DCA 1984), disapp'd on other grounds, Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla. 1986).[7] In my view, the holding of Martin suffers from the same infirmities as the majority's holding in this case.
Finally, I believe that there are sound and cogent public policy reasons for enforcing these waiver provisions contained in the contracts of guaranty. First and foremost, the issue of whether a guarantor is a "debtor" does not appear to have even been considered by the drafters of Article 9 of the UCC. That is reason enough for the courts not to expand its provisions to include guarantors and is consistent with the UCC's general policy not to displace traditional doctrines of waiver and estoppel unless so specified by particular provisions of the UCC. See 1 Anderson, Uniform Commercial Code § 1-103:69 (3d ed. 1985) ("The Code does not displace the prior principles of law governing waiver.").
Next, courts should be particularly vigilant about creating unwarranted restrictions on the freedom to contract. See, e.g., National Acceptance Co. of Am. v. Wechsler, 489 F.Supp. 642, 648 (N.D.Ill.1980) (explaining that guaranty agreements which provide the lender with a ready *391 source from which it can collect in the event of default by the debtor facilitate the issuance of loans); Lowy, 703 F.Supp. at 1044 n. 5 (citing by analogy to United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) for the proposition that absent legislative warrant, courts should be reluctant to alter workable commercial practices).
A third policy reason for permitting a pre-default waiver by guarantor is the fact that guarantors generally have a lesser interest in the collateral then does the primary debtor, thus, they do not need the protection of section 9-501(3) [section 679.501(3)] as they are more likely than debtors to enter into contracts with their eyes open. See First Nat'l Park Bank v. Johnson, 553 F.2d at 602 (stating that upholding a guarantor's waiver will not deprive the principal debtor of section 9-504(3) protection); H & S Realty Co., 837 F.2d at 2 (noting that the UCC policy of debtor protection is not contravened by a guarantor's waiver because the case of a guarantor is "one step removed from the debtor and the UCC policy").
Finally, and equally persuasive, is the notion that because the secured creditor's actions toward the debtor are already restricted and kept in check in UCC section 9-501 [section 679.501], a nonwaivability rule applied to guarantors provides little added protection. As the district court in H & S Realty explained:
The Court recognizes that the general purpose of section 9-504(3) protection is to prevent the economic waste that would result from commercially unreasonable dispositions of collateral and/or dispositions without notice to those legally interested in that collateral. Because the debtor will most frequently be legally interested in the collateral, section 9-501(3)(b) creates a prophylactic nonwaivability rule to protect all debtors from such dispositions. In other words, the UCC through the nonwaivability rule in effect appoints the debtor, as the party with the greatest incentive to ensure a commercially reasonable disposition of the collateral, to guard against economic waste. That function being fulfilled, there is no need for a nonwaivability rule applicable to guarantors as well.
United States v. H & S Realty Co., 647 F.Supp. 1415, 1423 (D.Me.1986).
Thus, in the absence of explicit UCC or statutory direction to the contrary, I would hold that the right to notice and/or the right to object to the commercial reasonableness of the collateral disposition as contained in section 679.501 do not apply to guarantors who do not own the collateral. In this case, it is undisputed that Tropical, and not the individual appellant guarantors, is the owner of the collateral. As such, I believe that the anti-waiver provisions contained in section 679.501 are inapplicable to these individual guarantors and their affirmative defenses as to the commercial reasonableness of the disposition of the collateral are unavailable to them as a matter of law, given their expressed waivers contained in the contracts of guaranty. See Von Dunser, 367 So.2d at 1095-96. Moreover, in the absence of any evidence in this record to indicate that these individual guarantors did not knowingly and voluntarily agree to the waiver provisions contained in the contracts of guaranty, I believe that summary judgment was properly entered against them and in favor of the bank. In affirming the summary judgment as to the individual guarantors, I would therefore certify conflict with Florida First National Bank at Pensacola v. Martin, 449 So.2d 861 (Fla. 1st DCA 1984).
NOTES
[1] Subsection 679.504(3) provides in relevant part that:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.
[2] Section 679.501 provides in pertinent part that:

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied[with exceptions not applicable here]:
. . . .
(b) Sections 679.504(3) and 679.505(1) which deal with disposition of collateral[.]
[3] The guarantees state, in part:

The undersigned specifically waives any notice in connection with the disposition of any collateral securing the obligations of the Debtor including but not limited to notice of date, time or place of sale or any other notice to which the undersigned might be entitled under the Uniform Commercial Code or under any other applicable Statutes and, further, the undersigned waives its right to object to the commercial reasonableness of any sale or disposition of collateral.
(Emphasis added).
[4] The full definition is:

"Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires[.]
§ 679.105(1)(d), Fla. Stat. (1995).
The dissenting opinion argues that the second sentence of the definition excludes guarantors. We disagree. The second sentence is dealing with a problem not now before us: where a borrower takes out a loan and a third person puts up the collateral. See § 679.105 comment 2, reprinted in 19C Fla. Stat. Ann. 179 (1990) (UCC § 9-105 comment 2); Gambo v. Bank of Maryland, 102 Md.App. 166, 648 A.2d 1105, 1109 (1994).
[5] In Landmark First Nat'l Bank v. Gepetto's Tale O' The Whale, 498 So.2d 920 (Fla.1986), the Florida Supreme Court said that a guarantor is entitled to have a commercially reasonable sale, but there is no indication the waiver issue now before us was raised in that case. See id. at 922.
[6] $10,000 loan balance minus $1,000 received by bank = $9,000 deficiency.
[7] The Gambo, Thompson Machine, and May courts state that it is the majority rule that a guarantor is a debtor for purposes of Article 9. See Gambo, 648 A.2d at 1108, 1110-13; Thompson Machine, 649 A.2d at 22; May, 807 P.2d at 1148. Whether one view or another of the UCC commands a majority of jurisdictions need not be resolved here, because the real issue is to decide what is the better interpretation of the UCC.

It bears mention, however, that UCC interpretation is ultimately an issue on which state court decisions will be authoritative. The Gambo and May opinions point out that some earlier federal decisions interpreting state law are no longer viable in light of later state court pronouncements on the same issue. See Gambo, 648 A.2d at 1111-13 & n. 9; May, 807 P.2d at 1149-50.
[8] In Florida, the quoted language is in comment 4 to section 679.501, Florida Statutes, reprinted in 19C Fla. Stat. Ann. 365 (1990).
[1] See, e.g. National Bank of Wash. v. Pearson, 863 F.2d 322 (4th Cir.1988) (deferring to state and district courts' interpretation of Maryland's Uniform Commercial Code); United States v. H & S Realty Co., 837 F.2d 1 (1st Cir.1987) (Maine's Uniform Commercial Code); United States v. New Mexico Landscaping, Inc., 785 F.2d 843 (10th Cir.1986)(relying on American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975)); United States v. Meadors, 753 F.2d 590 (7th Cir.1985) (Indiana's Uniform Commercial Code); United States v. Lattauzio, 748 F.2d 559 (10th Cir.1984) (New Mexico's Uniform Commercial Code); United States v. Kukowski, 735 F.2d 1057 (8th Cir.1984) (applying UCC as rule of federal law); United States v. Jones, 707 F.2d 1334 (11th Cir.1983); United States v. Southern Cycle Accessories, Inc., 567 F.2d 296 (5th Cir.1978) (federal common law); First Nat'l Park Bank v. Johnson, 553 F.2d 599 (9th Cir.1977) (Montana's Uniform Commercial Code); United States v. Bertie, 529 F.2d 506 (9th Cir.1976) (federal common law); Bank of N.J. v. Heine, 464 F.2d 1161 (3d Cir.1972) (New Jersey's Uniform Commercial Code); Chrysler Credit Corp. v. Curley, 753 F.Supp. 611 (E.D.Va.1990) (Virginia's Uniform Commercial Code); United States v. Lowy, 703 F.Supp. 1040 (E.D.N.Y.1989); United States v. Frey, 708 F.Supp. 310 (D.Kan. 1988); United States v. Kurtz, 525 F.Supp. 734 (E.D.Pa.1981); First City Div. of Chase Lincoln First Bank, N.A. v. Vitale, 123 A.D.2d 207, 510 N.Y.S.2d 766 (1987); Mutual Finance Co. v. Politzer, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970); Continental Leasing Corp. v. Lebo, 217 Pa.Super. 356, 272 A.2d 193 (1970).
[2] See, e.g., Mendelson v. Maplewood Poultry Co., 684 F.2d 180 (1st Cir.1982) (federal common law); United States v. Conrad Publishing Co., 589 F.2d 949 (8th Cir.1978) (federal common law and North Dakota's Uniform Commercial Code); United States v. Terrey, 554 F.2d 685 (5th Cir.1977) (Texas' Uniform Commercial Code); United States v. Hunter, 652 F.Supp. 774 (D.Kan.1986); United States v. Lang, 621 F.Supp. 1182 (D.Vt.1985); Ford Motor Credit Co. v. Lototsky, 549 F.Supp. 996 (E.D.Pa.1982)(Pennsylvania's Uniform Commercial Code); Commercial Discount Corp. v. King, 515 F.Supp. 988 (N.D.Ill.1981); Prescott v. Thompson Tractor Co., Inc., 495 So.2d 513 (Ala.1986); Connolly v. Bank of Sonoma County, 184 Cal.App.3d 1119, 229 Cal.Rptr. 396 (Cal.Ct.App.1986); First Nat'l Bank of Denver v. Cillessen, 622 P.2d 598 (Colo.Ct. App.1980); Savings Bank of New Britain v. Booze, 34 Conn.Supp. 632, 382 A.2d 226 (1977); Florida First Nat'l Bank at Pensacola v. Martin, 449 So.2d 861 (Fla. 1st DCA 1984); Branan v. Equico Lessors, Inc., 255 Ga. 718, 342 S.E.2d 671 (1986); Liberty Bank v. Honolulu Providoring Inc., 65 Haw. 273, 650 P.2d 576 (1982); United States v. Jensen, 418 N.W.2d 65 (Iowa 1988); Shawmut Worcester County Bank, N.A. v. Miller, 398 Mass. 273, 496 N.E.2d 625 (1986); Clune Equip. Leasing Corp. v. Spangler, 615 S.W.2d 106 (Mo.Ct. App.1981); Dakota Bank & Trust Co., Fargo v. Grinde, 422 N.W.2d 813 (N.D.1988); Peck v. Mack Trucks, Inc., 704 S.W.2d 583 (Tex.App. 1986).
[3] See e.g., Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538 (1966); Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla. 1st DCA 1977); Bank of Gering v. Glover, 192 Neb. 575, 223 N.W.2d 56 (1974); T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162 (Law Div.1969); Chase Manhattan Bank v. Natarelli, 93 Misc.2d 78, 401 N.Y.S.2d 404 (N.Y.Sup.Ct.1977); Zions First Nat'l Bank v. Hurst, 570 P.2d 1031 (Utah 1977).
[4] See generally Harry C. Sigman, Guarantors' Pre-default Waivers of Article 9 Debtors' Rights to Notice and Commercially Reasonable Disposition Should Be Effective, 29 Idaho L.Rev. 627 (1992/1993).
[5] UCC § 9-501, cmt. 4 (1977).
[6] See National Bank of Wash. v. Pearson, 863 F.2d 322 (4th Cir.1988); United States v. H & S Realty Co., 837 F.2d 1 (1st Cir.1987); United States v. New Mexico Landscaping, Inc., 785 F.2d 843 (10th Cir.1986) (New Mexico Law); United States v. Meadors, 753 F.2d 590 (7th Cir.1985) (Indiana Law); First Nat'l Park v. Johnson, 553 F.2d 599 (9th Cir.1977) (Montana Law); Chrysler Credit Corp. v. Curley, 753 F.Supp. 611 (E.D.Va.1990); United States v. Dehaven, 703 F.Supp. 414 (D.Md.1989); United States v. Crispen, 622 F.Supp. 75 (N.D.Ill.1985); United States v. Kurtz, 525 F.Supp. 734 (E.D.Pa.1981); National Acceptance Co. v. Wechsler, 489 F.Supp. 642 (N.D.Ill.1980); In re Collins, 132 B.R. 491 (Bankr.M.D.Fla.1991) (North Carolina Law); Rutan v. Summit Sports, Inc., 173 Cal.App.3d 965, 219 Cal. Rpt. 381 (1985); New Haven Water Co. Employees Credit Union v. Burroughs, 6 Conn.Cir.Ct. 709, 313 A.2d 82 (1973); Borg-Warner Acceptance Corp. v. Johnston, 97 N.C.App. 575, 389 S.E.2d 429 (1990); cf. Note, Commercially Unreasonable Foreclosure Sales in the Context of a Surety RelationshipUnited States v. Lattauzio, 34 U. Kan. L.Rev. 175 (1985).
[7] In Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12 (Fla. 1st DCA 1981), the first district held that the failure of a secured party to give the requisite notice, prior to a sale or disposition of collateral, precluded an action for deficiency against the guarantor and intimated in dicta that a pre-default waiver by a guarantor was invalid.