[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14697
_____

D. C. Docket No. 8:09-cv-01841-EAK-MAP

REGIONS BANK,

Plaintiff-Appellee,

versus

BING CHARLES W. KEARNEY, JR.,
BRIAN SEEGER, and TRACY J. HARRIS, JR.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 23, 2014)

Before MARTIN and ANDERSON, Circuit Judges, and COTE,* District Judge.

PER CURIAM:

_____

*Honorable Denise Cote, United States District Judge for the Southern District of New York,
sitting by designation.

The Appellants in this case, personal guarantors on a loan for a private jet, appeal the district court's calculation of damages following a bench trial. After careful consideration of the briefs, the record, and oral arguments, we conclude that the judgment of the district court should be affirmed.

The predecessor to Regions Bank ("Bank") loaned G3 Tampa, LLC ("G3") over five Million dollars to purchase a Gulfstream jet airplane ("Aircraft"). Members of G3, including the Appellants, personally guaranteed the loans. By March 31, 2009, G3 ceased to pay for maintenance of the Aircraft. In June 2009, G3 failed to make its loan payment. The Bank filed this lawsuit seeking to foreclose on the Aircraft, enforce repayment of the loan, and enforce the guaranties.

In November 2009, G3 took action to rid itself of the dormant Aircraft. G3 executed an Assignment for Benefit of Creditors action in Florida state court and attempted to abandon the Aircraft to the Bank. The Appellants did not advise the Bank that they agreed they remained liable to the Bank, and the Bank objected to the abandonment. Litigation dragged on and the Aircraft continued to sit dormant in an exposed hangar in St. Petersburg, Florida. Compromise led to the abandonment of the Aircraft to the Bank on September 22, 2010.

Regions Bank then entered into an agreement with a third-party broker to assess the condition of the Aircraft and market it. The Aircraft was non-operational

2

and not airworthy.  Because baseline repair costs to bring the Aircraft to airworthiness ranged from $530,000 to $810,000, the Bank elected not to perform repairs and to opt for an "as is where is" sale.  On June 2, 2011, some nine months after the abandonment, the Bank sold the Aircraft for $625,000.

Appellants argue that the district court erred by refusing to attribute at least a portion of the Aircraft's deterioration to the Bank's failure to maintain the aircraft.  The loan documents here unambiguously obligate the borrowers to maintain the Aircraft until the loan is satisfied.  Appellants cite to little more than quotations of cases and statutes related to assignments and abandonment.  These quotations are unavailing because they do nothing to address the existing contractual obligations.

The Appellants cite, for the first time in their reply brief, to an additional case that superficially supports their position.  Fla. First Nat. Bank at Pensacola v. Martin, 449 So. 2d 861 (Fla. Dist. Ct. App. 1984).  In Martin, the bank repossessed a boat and then retained it for many months without initiating normal procedures.  Id. at 865.  The value of the boat declined while in its possession and the bank then filed suit to foreclose on the boat.  Id.  The obligor argued that the bank failed to dispose of the boat in a commercially reasonable manner.  Id. at 863.  Citing to §§ 679.501 & 679.207, the court agreed with the obligor and held "[o]nce the secured party repossesses collateral to secure payment of the debt after default, that party is

under a duty of care to protect and preserve the collateral and dispose of it in a manner likely to bring the full fair value." Id. at 865.

Martin is distinguishable from the case at hand in at least two significant respects. First, unlike Martin where the bank actually repossessed the collateral, id. at 864, the Appellants here attempted to foist the Aircraft upon the Bank with the state-court abandonment procedure, but the district court found that the Bank did not take possession until September 22, 2010.[1] Second, Appellants failed to argue that the Bank completed a commercially unreasonable sale of the Aircraft pursuant to Florida code, so this argument is waived. Moreover, the district court made findings of fact that the Bank's decisions, after it acquired title to the Aircraft on September 22, 2010, to sell it "as is where is" as well as to the Bank's sale of the Aircraft for $625,000 were commercially reasonable. Those findings are not clearly erroneous.

The Appellants also argue that the district court failed to recognize the stipulation reached by the parties as to the proper date for the set-off calculation. The Court reviews the determination of damages for abuse of discretion. "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of

---

[1] Appellants argue on appeal that the Bank had possession of the Aircraft as of January, 2010. To the extent Appellants fairly presented an argument to the district court that the Bank had possession as early as January, 2010, thus giving rise to a duty to preserve, that argument was rejected by the district court. This finding of the district court is not clear error.

fact that are clearly erroneous." In re Red Carpet Corp. of Panama City Beach, 902

F.2d 883, 890 (11th Cir. 1990).

> In its post-trial memorandum, the district court stated

> The Court has determined the Transfer Value to be $1,000,000. The Court believes that the fair market value as of the date of the Transfer is to be considered in establishing the right to a deficiency, but the amount obtained from the sale of the collateral determines the amount of the deficiency. The sale amount of $625,000 establishes a deficiency amount of $5,604,598.72, together with accrued interest, attorney's fees and costs.

The Appellants argue on appeal that the parties stipulated in the trial court that the

set-off to which the Appellants were entitled would be the value of the Aircraft at

the time the collateral was transferred to the Bank—i.e. September 22, 2010.  When

a sale is made in a commercially reasonable manner, the amount of set-off against

the deficiency judgment is ordinarily the amount received through the sale.  See,

e.g., Weiner v. Am. Petrofina Mktg., Inc., 482 So. 2d 1362, 1364 (Fla. 1986);

Williams v. Kloeppel, 537 So. 2d 1033, 1037 (Fla. Dist. Ct. App. 1988).   In any

event, if the district court erred in using as the set-off amount the $625,000 which

the Bank actually received when it later sold the collateral in June, 2011, any error

was harmless.  As noted in the quotation above, the district court found that the

value of the Aircraft at the date of the transfer to the Bank—i.e. September 22,

2010—was $1,000,000.[2]  The amount owed to the Bank was $6,229,598.72.  Even

---

[2] The Appellant's final argument on appeal was that the district court was clearly

if the proper set-off is $1,000,000, rather than the $625,000 used by the district court, the deficiency would be $5,229,598.72. That amount still exceeds the total liability imposed on the Appellants by the judgment of the district court. That total liability was less than the actual deficiency because the guarantee of the Appellants was limited by contract. The total liability of the three Appellant-guarantors was $4,685,557.85.[3] Thus, even using $1,000,000 as the proper set-off, each Appellant was still liable up to the limit of his respective guarantee.

Other challenges to the judgment of the district court are rejected without need for further discussion.

AFFIRMED.

---

erroneous in finding this value, arguing that the sale value was clearly at least $2,500,000. We reject this final argument. There was ample admissible evidence to support the district court's finding that the value was $1,000,000 at the time of transfer.

[3] Appellant Kearney's guarantor liability was limited to $3,407,620.35. The guarantor liability of Appellants Harris and Seeger was limited to $638,968.75, each. Thus, the total guarantor liability was limited to $4,685,557.85.